# Exhibit
# H

IN ..E SUPERIOR COURT OF THE S.. .E OF ARIZONA

IN AND FOR THE COUNTY OF COCONINO

Danna D. Hendrix, Judge
Division 5
Date: November 7, 2001

Julie Carlson, Clerk
Jenni Wiedmann, Deputy Clerk

---

## MINUTE ENTRY

---

| | |
|---|---|
| STATE OF ARIZONA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR 99-0806 |
| ) | |
| KYLE DEBERRY, ) | |
| ) | |
| Defendant. ) | |

---

**ACTION: UNDER ADVISEMENT RULING**

The Court finds the State did not breach the plea agreement. Although the arguments offered by the State as to the aggravating factors were not clearly differentiated from the issue of provocation, the State conceded that adequate provocation existed to support the manslaughter charge. Further, the Court clearly understood that the factual basis for the plea supported a finding of adequate provocation.

The Court finds that judicial estoppel does not apply. The parties argued the amount of provocation, not whether provocation existed.

A defendant's remorse can be a mitigating factor to be considered by the court. On the other hand, in State v Lawrence, 112 Ariz. 20 (1975), a case cited by Petitioner in his Memorandum re: Aggravating Factors, the court found a defendant's demonstrated gross lack of remorse and callous attitude could be considered by the Court at sentencing. That case does not answer the question whether a gross lack of remorse and callous attitude is an aggravating factor, as opposed to evidence that cancels a request for a mitigated finding of remorse.

In this case, the trial judge found lack of remorse was a substantial aggravating factor:

Petitioner "still says and has always said [the shooting] was justified and . . . he was after you and you shot. And the lack of remorse . . . is an appropriate factor."

Minute Entry, Page 2
Case No. CR 99-0806
State v. Kyle DeBerry
Date: November 7, 2001

The trial judge went on to state:

> [I]n order for you to. . . really be rehabilitated, you must acknowledge your
> real responsibility in this and full responsibility and acknowledgment in this.
> And I find . . that your self-absorption is such that you see yourself as a victim
> of this in some ways and that you are not. So, I find that as an aggravating
> factor.

It is important to note that pursuant to the plea, the parties agreed the facts support a
finding of adequate provocation.

A review of the entire record fails to support the trial judge's finding that lack of remorse
was a proper aggravating factor.

If drug use impairs a defendant's capacity to appreciate the wrongfulness of his
conduct, it is a mitigating factor. In this case, the trial judge found methamphetamine use was
an aggravating factor:

> I find as another aggravating factor the methamphetamine use. I can't ignore
> the fact that this was the culture of drugs and that your involvement in it
> aggravated and horrified this nightmare to where it is. I cannot ignore the
> horrific aspects of this.

The State argues that the trial judge based his finding on Petitioner's life in a culture of
drugs. A review of the entire record fails to support the trial judge's finding that
methamphetamine use was a proper aggravating factor.

Based on this ruling, it is unnecessary to determine whether the trial judge failed to
consider the mitigating factors presented by the defense as those factors may be presented at
the sentencing hearing.

IT IS ORDERED vacating the sentence and setting sentencing for Friday,
November 30, 2001 at 9:00 a.m. before Honorable Danna Hendrix at U.S. District Court,
123 N. San Francisco St., Flagstaff, Arizona. One day is set aside for the hearing.

November 7, 2001
_____
Dated

_____
Judge Danna Hendrix

cc:   County Attorney
      Tom Gorman, 300 Apache Trail, Sedona, AZ 86336
      Coconino County Sheriff's Department

# Exhibit
# I

1 | **TERENCE C. HANCE**
**COCONINO COUNTY ATTORNEY**

2

3 | Susan V. Sterman
Deputy County Attorney
Bar # 016312

4 | 110 E. Cherry Avenue
Flagstaff, Arizona 86001-4627

5 | PHONE: (928) 779-6518
FAX: (928) 779-5618

6 | Attorney for the State

**COURT OF APPEALS OF THE STATE OF ARIZONA**

7

**DIVISION ONE**

8

9

10 | STATE OF ARIZONA,

| CA-CR

| Plaintiff,

11

| vs.

12 | | Superior Court No. CR 99-0806

| KYLE DEBERRY,

13 | | **PETITION FOR REVIEW**

| Defendant

14 | | Oral Argument Requested

15

COMES NOW the State of Arizona, by and through the undersigned deputy, and

16 | hereby submits its Petition for Review of the decision of the trial court (Judge Danna

17 | D. Hendrix) granting defendant's Petition for Post-Conviction Relief in part. Defendant

18 | petitioned for post-conviction relief on the grounds that the State had breached the plea

19 | agreement with the defendant and that the sentencing judge (Judge Robert Van Wyck)

20 | improperly used two factors to aggravate the defendant's sentence. Judge Hendrix

21 | found that the State had not breached the plea agreement but did find that Judge Van

22 | Wyck had used two improper factors to aggravate the defendant's sentence. As more

23 | fully set forth below, Judge Hendrix misapplied the standard for upholding a sentence

24 | by a trial judge and incorrectly found that the two aggravating factors used by the

25 | sentencing court were improper. The Petition should have been denied in its entirety.

26

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS:

Defendant was charged with First Degree Murder in the death of Lamont Lattery. Defendant admitted that he killed the victim but argued self defense and that he was provoked by the victim as justification. Plea negotiations between the parties continued until May 12, 2000, when defendant dropped his claim to self defense and accepted a plea agreement reducing the charge from First Degree Murder to Manslaughter under Section 13-1103 (A) (2) of the Criminal Code. This section of the Criminal Code provides that

> A.  A person commits manslaughter by:
>
> ...2.  Committing second degree murder as defined in §13-1104, subsection A upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim...

Thus, the State, by agreeing to lower the charges to Manslaughter under this section of the Criminal Code, conceded "adequate" provocation by the victim. Not "great" provocation, not "intense" provocation but rather, as set forth by A.R.S. §13-1101 (4), "conduct or circumstances sufficient to deprive a reasonable person of control."

After a three day Aggravation/Mitigation hearing the defendant was sentenced to an aggravated term. The sentencing court (Judge Van Wyck) found three aggravating factors and no mitigating factors. The defendant filed a Petition for Post-Conviction Relief (hereafter "PCR") on April 30, 2001[1]. There followed an exchange of Responses, Reply, Supplements to the PCR and Responses thereto, all part of the record. As of January 1, 2001, Judge Van Wyck was no longer in Division 1 and Judge Flournoy took over the matter. On August 24, 2001, Judge Flournoy recused

---

[1]   Exhibit A, Petition for Post-Conviction Relief

1   himself and the PCR was assigned to the Honorable Danna Hendrix of Division 5.

2   Judge Hendrix held a hearing on the PCR and thereafter, issued a minute entry, dated

3   November 7, 2001, granting the PCR in part and setting the case for re-sentencing on

4   November 30, 2001.[2]

5   **A. SUMMARY OF THE PCR:**

6   The PCR argued that the State had breached the plea because an agreement by

7   the State not to discuss the extent of provocation had somehow been created during

8   the recitation of the factual basis at the time of the plea. The defendant contended that

9   the plea agreement meant that the State could not contest the defendant's presentation

10   of evidence regarding the degree of provocation at the aggravation/mitigation hearing

11   . The PCR further argued that the state's failure to correct defense counsel's recitation

12   of provocative acts and of defendant's beliefs about the situation during the recitation

13   of the factual basis at the time of the plea (PCR, pps 8-10) also meant that the State

14   agreed not to consider the circumstances of the killing at the aggravation/mitigation

15   hearing. Finally, the PCR translated the prosecutor's thanks to the court for its

16   expression of appreciation to both counsel for a "professional and competent"

17   presentation into an agreement that the State would not discuss the killing, and the

18   provocation which preceded it, at sentencing (PCR, p. 11).

19   As a corollary to this argument, the PCR argued that the prosecutor's reference

20   to "second degree murder" within the manslaughter statute, A.R.S. 13-1103(A)(2),

21   should be taken as an improper request that defendant be sentenced for second degree

22   murder. (P. 26) The PCR also argued that the State's request for a finding of

23   aggravation under A.R.S. 13-702(A)(14), alleging the victim was killed because he

24   was a homosexual, meant that the State asked that defendant be sentenced for a first-

25

26   [2]   Exhibit B, Minute Entry, November 7, 2001.

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

1   degree "premeditated" murder. (P.26)

2       The PCR also claimed  that the trial court failed to consider substantial

3   mitigation presented by the defendant and that it found two aggravating factors that are

4   not recognized under the State or federal constitution. (PCR, p. 2, 29)

5       In his Reply, the defendant raised the doctrine of judicial estoppel, arguing that

6   the State was barred by this doctrine from asserting any statements regarding the

7   degree of provocation during the aggravation/mitigation Hearing. (P.6) The sentencing

8   court found three substantial aggravating circumstances: (1) emotional and financial

9   harm to the victim's family; (2) statements of the witnesses and the defendant which

10  indicate a belief that this crime was justified and the defendant lacks remorse; and (3)

11  there was methamphetamine use. (Judge Van Wyck called this "life in a culture of

12  drugs" rather than drug use during the commission of the crime)

13      Judge Hendrix held that the Doctrine of Judicial Estoppel did not apply and that

14  the State had argued the amount of provocation and not whether provocation existed.

15  She held  that the plea agreement had not been breached. The Court further found that

16  the sentencing court had improperly used two aggravating factors; lack of remorse and

17  methamphetamine use.[3]

18  **II. ISSUE**

19      1. Did the sentencing court improperly use  two aggravating factors that are not

20      permitted under law?

21

22  **III. ARGUMENT**

23      **A. THE SENTENCING COURT SHOULD BE UPHELD**

24      The defendant asserted that the sentencing court abused its discretion when

25  _____

26  [3]    Id.

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

1   sentencing defendant to an aggravated term on his plea of guilty of manslaughter.   It

2   is fundamental that a sentence within statutory limits will not be disturbed on appeal

3   unless it is clearly excessive and an abuse of discretion.[4]  An abuse of discretion can

4   be shown by "arbitrariness or capriciousness, and a failure to adequately take into

5   account the circumstances of the offense and the past conduct and moral character of

6   the defendant."[5]    In this case, the sentencing court conducted a three-day

7   aggravation/mitigation Hearing, received substantial information from both the State

8   and the defendant in the form of written memorandums asserting issues and facts  for

9   the court  to consider in aggravation and mitigation of the sentence  and heard directly

10  from witnesses and the defendant prior to sentencing.  All of this information formed

11  the basis for the sentence and cannot be considered a failure to "investigate adequately

12  the facts necessary for the intelligent exercise of the trial court's sentencing power..."[6]

13  such that an abuse of discretion occurred.

14          **1.   THE   SENTENCING   COURT   COULD   CONSIDER
15       DEFENDANT'S LACK OF REMORSE AS AN AGGRAVATING
        FACTOR.**

16          The State presented evidence of the defendant's lack of remorse  through the

17  testimony of third parties who witnessed  statements by the defendant regarding  his

18  feelings about the victim's death.  The defendant also commented on the issue of

19  remorse just before he was sentenced.    Based on this evidence, the court found

20  "statements of the witnesses and the defendant which indicate a belief that this crime

21

22

23  [4]    *State v Limpus,* 128 Ariz 371, 624 P. 2d 960 (App. 1981) (citations
            omitted)

24  [5]    Id at p. 378, citing *State v Gordon,* 125 Ariz 425, 610 P.2d 59
25            (1980)

26  [6]    *State v Gannon,* 130 Ariz 592, 638 P.2d 206 (1981)

1   was justified and the defendant lacks remorse"as an aggravating factor.[7]

2   The PCR relied on *State v. Tinajero*,[8] to claim that the court improperly found

3   lack of remorse as an aggravating factor.   (P.32) However, the   PCR directly

4   contradicts the defendant's Memorandum re: Aggravating Factors[9], filed on June 15,

5   2000, which acknowledged that "a defendant's gross lack of remorse and callous

6   attitude can be considered by the Court at sentencing (citations omitted)."   Any error

7   attributed to Judge Van Wyck would thus be invited error.   If the PCR were correct

8   that lack of remorse cannot be used to aggravate a sentence, the defendant should not

9   benefit from his misstatement of the law.

10   Judge Hendrix found that while the case cited by the defendant in the

11   Memorandum[10] and relied upon by the State did, in fact, hold that lack of remorse

12   could be considered, she went on to question "whether a gross lack of remorse and

13   callous attitude is an aggravating factor, as opposed to evidence which cancels a

14   request for a mitigated finding of remorse."[11]   Here, the defendant did not request a

15   finding of remorse in mitigation.

16   There are other Arizona cases where lack of remorse as an aggravating factor

17   has been upheld by implication.[12]   For example, in *Robinson*   the sentencing court

18   _____

19   [7]   Exhibit C, Transcript, June 15, 2000, pps132-133, Lns 16-12.

20   [8]   188 Ariz. 350, (Div. 1, 1997)

21   [9]   Exhibit D

22   [10]   *State v Lawrence*, 112 Ariz 20

23   [11]   Exhibit B, supra

24   [12]   *State v Gerlaugh*, 144 Ariz 449, 698 P.2d 694 (1985); *State v Jones*,
25   147 Ariz 353, 710 P.2d 463 (1985); *State v Robinson*, 153 Ariz 188
     735 P2d 798 (App. 1986) (Modified on other grounds, En Banc, 153
26   Ariz 191, 735 P2d 801 (1987)

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4827
(928) 779-6518

found five aggravating factors, including lack of remorse. The defendant appealed because, among other things, he felt that his sentence was excessive. The Arizona Court of Appeals upheld the sentence stating that the sentencing court "was well within its discretion in the imposition of the sentences."[13] While not addressing the issue of lack of remorse as an aggravating factor directly, by letting the sentence stand as aggravated by that factor, the Court implicitly approved of such use.

Similarly, in *Jones*, the Arizona Supreme Court heard an appeal of a conviction and sentence where the sentencing court found four aggravating factors; that the defendant was drunk at the time of the accident, that the defendant had a previous DUI, the severity of the injury to the victim and defendant's lack of remorse.[14] The court upheld the conviction but overturned the sentence on the grounds that the first two aggravating factors (defendant's blood alcohol level and prior DUI) were not proved by the State and that there was no evidence in the record which substantiated the first two aggravating factors. However, although presented with the opportunity to discuss lack of remorse as an aggravating factor, the court was silent on that issue while overturning the sentence because the first two aggravating factors were not proven. *Jones* was heard by the Supreme Court in January, 1985. Shortly thereafter, the Arizona Supreme Court was again presented with the issue of lack of remorse as an aggravating factor in *Gerlaugh* in a Rule 32 proceeding in a death penalty case.

*Gerlaugh* complained in his petition for post-conviction relief that the sentencing court had not considered that the petitioner had cooperated with the police as a mitigating factor. The court dismissed this contention finding that the petitioner's only cooperation with the police was his confession to the crimes charged.

---

[13] *Robinson* at 189.

[14] *Jones* at 354.

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

> **Given petitioner's lack of remorse for his crimes and the other aggravating circumstances of this case, we believe** that the trial court at the rule-32 hearing acted well within its discretion in rejecting this (police cooperation) as a substantial mitigating factor sufficient to warrant resentencing.[15] (emphasis added)

## 2. *TINAJERO* DOES NOT APPLY TO THE INSTANT CASE

The PCR misapplied *Tinajero*. The defendant in *Tinajero* went through a jury trial claiming innocence by testifying that he was not the driver in a fatal accident. He maintained his innocence through sentencing. Penalizing him for his failure to express remorse put him in an impossible position, since an expression of remorse would require him to admit to acts he claimed not to have committed. His Fifth Amendment privilege prevented the sentencing court from considering his refusal to express remorse. There is no suggestion in *Tinajero* that other witnesses offered admissible testimony documenting his lack of remorse.

Mr. DeBerry's situation is completely different. He pled guilty and waived his Fifth Amendment rights, among others. He acknowledged responsibility for the killing and, unlike Mr. Tinajero, would not compromise his position about the facts of the offense by expressing remorse. He addressed Judge Van Wyck just before sentence was pronounced, and, nine months after the killing and at a time when an expression of remorse could not affect a claim of innocence , he was still unable to show regret:

> I'd like to move on next to the issue of remorse....I think there was a few times that I ever even was asked about it. Would have been the times with Detective Treadway. I was very much under the gun. I was very much feeling on the defense there. And to add to that, not so much Detective Treadway, but more Ron Schmenk put me in the mind-set, and I can't say created because I had a lot of the same feelings. It was almost that he was on the same page as me; he knew Lamont, where he came up with his reference to Lamont, the fact that he had children and that the world was safe now that someone like that wasn't around, could have led to a lot

---

[15]    *Gerlaugh* at 464.

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

> of the nasty remarks or crude or rude things that I might have said at the time.
>
> I still have a lot of conflict and a lot of confusion when it comes to my feelings on what took place with myself and Lamont and how remorseful I really am about his death. He caused me not just a few days or a few letters that you've seen of hardship, but years of continual letters.[16]

Judge Van Wyck was not improperly inferring lack of remorse from a defendant's silence. He was not putting a defendant who maintained his innocence into an impossible situation. He made a factual finding based in part on the chilling words he had just heard from the defendant.

*Mitchell v. United States,*[17] holds that a defendant can waive her 5th Amendment privilege at a change of plea and still claim it at sentencing. A negative inference cannot be made because the defendant failed to speak, even if she waived her 5th amendment privileges at the time of pleading guilty. This case involved, however, a failure to explain defendant's facts of the crime testified to by other witnesses, not to the issue of remorse.

Although the PCR claims that the State urged the court to draw a negative inference from "Petitioner's pre-charging, post charging silence..." the State actually asked the court to find lack of remorse based on the defendant's many pre-charging statements demonstrating lack of remorse. (P. 33) These statements were competent testimony, whether or not defendant choose to speak at sentencing.

The defendant had told Sgt. Treadway, in a conversation that the defense never previously claimed violated the 5th Amendment, that, among other things, he was "happy" to know the victim was dead, that the victim "probably deserved" to be killed,

---

[16]   Exhibit E, Transcript, June 15, 2000, P. 120, Ln 16 to P. 121, Ln. 13.

[17]   526 US 314 (1999)

-9-

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

1   and that "the guy had it coming to him." Mr. DeBerry's problem was not that he was

2   silent after charging, but that he talked and expressed his true feelings to others before

3   charging.   They repeated his remarks to the court.   Given the specific testimony

4   demonstrating defendant's callous attitude, the PCR's claim that the court's finding of

5   lack of remorse  was based on the defendant's constitutionally-protected silence is

6   unfounded.

7          In his Memorandum RE: Aggravating Factors, defendant admits that he did not

8   have remorse to such a degree that it should be considered in mitigation.[18]

9   Additionally, defendant recognized that his **lack of remorse** could be considered at

10  sentencing.[19]  Defendant did not ever object to lack of remorse being used as an

11  aggravating factor after he had notice that the State had requested such an aggravating

12  factor.

13         However, this is really not the issue. The defendant did not remain silent. The

14  defendant voluntarily spoke to the Court during the sentencing and talked about

15  "remorse."[20] The Court was able to assess the defendant's remorse or lack of remorse

16  through defendant's voluntary statements. This is not a case where the Court took the

17  defendant's silence as lack of remorse but, rather, a situation where both sides put on

18  testimony regarding remorse and where the defendant voluntarily testified to the Court.

19  The Court appropriately found that defendant's lack of remorse was an aggravating

20  factor.

21

22

23  —————————————————

24  [18]    Exhibit C, page 5.

25  [19]    Id.

26  [20]    Exhibit E, supra at Ln. 16-121.

**B.  THOUGH INARTFULLY STATED, THE SENTENCING COURT PROPERLY CONSIDERED DEFENDANT'S LIFE IN A CULTURE OF DRUGS AS AN AGGRAVATING FACTOR.**

The court did not find that the defendant's ability to appreciate the wrongfulness of his conduct had been impaired by drugs.  The  defendant brought out his drug use to explain what his life was like with the victim and how he and the victim were caught up in the life and culture of drugs.[21]  Indeed, the defendant urged the sentencing court to consider the circumstances of the offense and the past  conduct of the defendant.[22]  And that is exactly what the sentencing court considered.

Under A.R.S.§13-702(C)(18) the sentencing court may consider "any other factor that the court deems appropriate to the ends of justice."   A review of the sentencing transcript of June 15, 2000, finds the defense attorney arguing to the sentencing judge that "(W)e have acknowledged here the legitimate aggravating circumstances that exist" but then urged the court not to ignore among other things "the person who got lost with drugs".[23]  Judge Van Wyck did not ignore the drug issue but found it an aggravating factor because the defendant had lived his life in a drug culture, with drug friends (including the victim) who abetted his drug addiction.  This is a proper factor under A.R.S. §13-702(C)(18).

Instructive in this instance is *State v Shuler*[24].  Defendant Shuler appealed his sentence on the question of whether prior arrests could properly be used as an aggravating circumstance in determining his sentence.  Division One of the Arizona

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

---

[21]   Exhibit F, Defendant's Presentence Memorandum, June 13, 2000, pp. 3-4.

[22]   Id. at page 9 (citing *Limpis,* supra.)

[23]   Exhibit G, Transcript, June 15, 2001, page 113, Lns. 6-13.

[24]   162 Ariz 19, 780 P.2d 1067 (App. 1989)

-11-

1 │ Court of Appeals discussed A.R.S. §13-702(D)(18) (previously (D)(13)) and some of

2 │ the issues that the court may consider when determining a defendant's past conduct

3 │ and moral character.[25] *Shuler* contended that mere arrests without convictions should

4 │ not be used as an aggravating factor. The Court of Appeals agreed but held, that while

5 │ the mere report of an arrest is not sufficient to aggravate a sentence without some

6 │ evidence to demonstrate that a crime or some bad act was committed by a defendant,

7 │ most of the arrests involved in *Shuler* resulted in conviction and so upheld the

8 │ sentence. The evidence of bad acts and immoral character against DeBerry is

9 │ undisputed. The defendant has admitted that he was addicted to methamphetamine;

10 │ that he and the victim were deeply involved in the drug culture; and that the drug

11 │ culture created the person that he was.

12 │    The sentencing court considered this "culture of drugs" and the defendant's

13 │ involvement in it as something that "aggravated and horrified this nightmare to where

14 │ it is. I cannot ignore the horrific aspects of this."[26] The sentencing court may have

15 │ been inartful in its identification of this aggravating factor but nonetheless, was entitled

16 │ to consider the past conduct and character of the defendant under A.R.S. §13-

17 │ 702(C)(18).

18 │        It is true that a sentencing court may consider information
      │        that does not conform to the same high procedural standards
19 │        as evidence introduced at trial (citations omitted)...a court
      │        may take criminal acts into account even if they did not
20 │        result in conviction. (Citations omitted) However, the court
      │        must satisfy itself that the defendant committed the acts in
21 │        questions.[27]

22 │    There has never been any doubt that DeBerry was completely involved in the

23 │ ————————————————

24 │ [25]   Citing *State v Gray*, 122 Ariz 445, 595 P.2d 990 (1979)

25 │ [26]   Exhibit H, Transcript, June 15, 2000, page 133, Ln 14-19.

26 │ [27]   *Brothers v Dowdle*, 817 F.2d 1388, 1390 (9th Cir., 1987)

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

1  local drug culture and that this involvement, not his use of drugs, contributed to the
2  death of the victim.

3  **IV. CONCLUSION**

4      Defendant was charged with First Degree Murder.   He pled guilty to
5  Manslaughter. Thereafter, the sentencing court held a three day aggravation/mitigation
6  hearing and then sentenced the defendant to an aggravated term finding three
7  aggravating factors; emotional and financial harm to the victim's family, the
8  defendant's lack of remorse and methamphetamine use.  The sentencing court found
9  no mitigating factors.  Defendant filed a Petition for Post-Conviction Relief alleging
10  that the State had breached the plea agreement and that the sentencing court had
11  applied two improper aggravating factors; lack of remorse and drug use.

12      After a recusal by Division 1, Judge Hendrix held a hearing and issued a minute
13  entry finding that the plea agreement had not been breached but that the sentencing
14  court had found two improper aggravating factors. She set November 30, 2001, for the
15  resentencing hearing.

16      The State urges this Court to uphold the sentencing court. The State and the
17  defendant both agreed that lack of remorse could properly be considered by the
18  sentencing court. Judge Hendrix 's belief that "lack of remorse" could only be used
19  to cancel a request for a mitigated finding of "remorse" is misplaced.  This defendant
20  never requested a finding of "remorse" in mitigation. This factor has been used in other
21  Arizona cases as an aggravating factor without being struck down. This Court should
22  find that lack of remorse is a proper aggravating factor.

23      Although inartfully stated, the second aggravating factor of "methamphetamine
24  use" should be upheld. The sentencing court considered not the "use" of drugs during
25  the crime but rather the lifestyle of the defendant as put forward through the witnesses
26  and defendant's own admission during the hearing.  The sentencing court found,

1  properly, under A.R.S. §13-702(c)(18) that the "culture of drugs" and the defendant's

2  involvement in that culture, was a factor that could properly aggravated the defendant's

3  sentence.

4      Wherefore, it is respectfully requested that the State's Petition for Review be

5  granted in its entirety and for such other and further relief as the Court may deem just

6  and proper.

8      RESPECTFULLY SUBMITTED this _16 th_ day of November, 2001.

        TERENCE C. HANCE
        COCONINO COUNTY ATTORNEY

        By
        Susan V. Steirman
        Deputy County Attorney

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

1   COPY of the foregoing
    mailed/delivered this
2   _16th_ day of November, 2001,
    to:
3
    The Honorable Danna D. Hendrix
4   Superior Court, Division V
    Coconino County Courthouse
5   Flagstaff, AZ 86001

6   Tom Gorman
    113 E. Birch Avenue
7   Flagstaff, Arizona 86001

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TERENCE C. HANCE
COCONINO COUNTY ATTORNEY
110 E. CHERRY AVENUE
FLAGSTAFF, ARIZONA 86001-4627
(928) 779-6518

# Exhibit
# J

1   Thomas A. Gorman, Esq. SBN 011219
    Criminal Law Specialist
2   113 East Birch Street
    Flagstaff, AZ 86001
3   (928) 779-4509
    Attorney for Respondent/Defendant
4
                    IN THE COURT OF APPEALS-DIVISION ONE
5
                              STATE OF ARIZONA
6
    THE STATE OF ARIZONA,                    Case No. 1 CA-CR 01-1009 PR
7
                 Petitioner/Plaintiff,
8                                            RESPONDENT'S CROSS-PETITION
        vs.                                  FOR REVIEW
9
    KYLE DEBERRY,                            Coconino County Case
10                                           No. CR 99-0806
                 Respondent/Defendant.
11

12
    _____

13
            Respondent, Kyle DeBrerry, through undersigned counsel, pursuant to Rule 32.9 (c),
14
    Arizona Rules of Criminal Procedure, hereby petitions this Court for review of the Coconino
15
    County Superior Court's denial of that portion of his Petition for Post Conviction Relief ("PCR")
16
    requesting that he be allowed to withdraw from his plea agreement due to the State of Arizona's
17
    ("State") breach during sentencing of material terms of the agreement which had induced him to
18
    plead guilty.[1] Respondent respectfully requests that this Court reverse the trial court's decision as
19
    being clearly erroneous and an abuse of discretion, and remand this matter with directions to vacate
20
    Respondent's conviction and sentence and set this matter for trial.
21
            This Cross-Petition is further supported by the following Memorandum of Points and
22
    Authorities, attached Minute Entry, separately field Appendix of Exhibits ("Appendix") and trial
23

24
    _____
25
    [1] Respondent respectfully requests that this Cross-Petition be joined with the State's pending Petition for Review.

                                              - 1 -

and PCR record as requested in the separately filed Notice and Designation of Review Record filed

contemporaneously herewith in the trial court.

RESPECTFULLY SUBMITTED this $\underline{27th}$ day of March, 2002

Thomas Gorman, Esq.
Attorney for Respondent

## MEMORANDUM OF POINTS AND AUTHRORITIES

### I.   ISSUES ON REVIEW:

Respondent hereby seeks review of the following issue presented to the Superior Court in

his PCR: Is Respondent entitled to either withdraw his guilty plea to manslaughter or be

resentenced, since at sentencing the State breached the plea agreement and its other promises and

representations made throgh counsel during pre-plea negotiations and during the change of plea

proceeding, which induced Respondent to plead guilty, in violation of his right to due process under

the Fifth and Fourteenth Amendments to the U.S. Constitution?

### II.   FACTS MATERIAL TO THIS CROSS-PETITION:

A.  Procedural History:

Respondent was indicted by the Coconino County Grand Jury of first degree premeditated

murder on October 14, 1999. (ROA[2]-Indictment, Item 3.) Respondent was represented by Bruce

Griffen during the trial phase of this case who advocated through out the proceedings that the

alleged victim, Lamont Lattery, had adequately provoked Respondent making this homicide a

---

[2] Citations to the Record on Appeal ("ROA") are to the record previously transmitted in conjunction with the state's pending Petition for Review of the trial court's order granting DeBerry a resentencing due to the trial judge's improper consideration of evidence as aggravating and failure to consider proffered mitigation evidence.

manslaughter. (Affidavit of Griffen, Appendix, Exhibit "A.")[3]  DeBerry waived his constitutional rights and entered a plea of guilty to manslaughter pursuant to a plea agreement on May 12, 2000. (ROA-Minute Entry: Change of Plea, Item 60.) The trial court held an aggravation and mitigation hearing on June 13, 14 and 15, 2000, following which it sentenced DeBerry to an aggravated term of 16 years in prison. (ROA-Minute Entries: Agg/Mit Hearing & Sentencing, Items 79, 81, 84 & 85.)

On April 30, 2001 DeBerry timely filed a Petition for Post Conviction Relief, supported by uncontested affidavits, praying that his conviction and sentence should be set aside and guilty plea withdrawn on the grounds that the state had violated material terms of the plea agreement at sentencing when it argued, contrary to its promises during plea negotiations and at the change of plea proceeding, that defendant was not in fear of the alleged victim nor adequately provoked when he shot him. (ROA-PCR, Item 103.)  After additional briefing by both the state and DeBerry, the court held oral argument on the PCR on October 16, 2001. (ROA-Minute Entry: Oral Argument, Item 124.) On November 7, 2001 the trial court issued its Order denying DeBerry's PCR claim on this issue and granting his claim requesting resentencing for improper consideration of aggravating factors and failure to consider mitigating evidence. (Minute Entry: Under Advisement Ruling, 11/7/01- attached hereto.)

B. Facts Relevant to the Issue Presented:

Respondent's position throughout this matter has been that Lattery was a drug addict who was a homosexual obsessed with Respondent and determined to force him into unwanted sexual acts, who was trained and capable of violence, and who stalked and threatened him prior to Respondent shooting and killing Lattery in self-defense or as a result of duress and with adequate

---

[3] References to the Appendix hereto will initially be identified by title and thereafter referenced by Exhibit letter

provocation. (Exhibit "A"; ROA-Defense Disclosure, Item 35; R.T. 5/12/00 at 12, line 2 to 13, line

10, Appendix, Exhibit "D.") Initially the State's position was that "contrary to the arguments

advanced by his attorney, [DeBerry] had no physical fear of Mr. Lattery, knew he could overpower

him in a fight, and had no genuine fear of Mr. Lattery which would require defendant to arm

himself for the encounter . . ." (ROA-State's 404(b) Motion, Item 44.)

In support of his claim of duress and self-defense Respondent had planned on introducing

his statements to the investigating detective that Lattery had left him a phone message the day of the

homicide threatening to force him to have homosexual relations, that Lattery had been parked in

front of DeBerry's family home stalking him, and that when he confronted Lattery the day of the

homicide he was scared and shot in self-defense.. The State maintained that such statements were

inadmissible because they was "no indication from the evidence to corroborate the statements

accuracy or trustworthiness. . . In this matter, the defendant's statements that the victim called and

left a threatening message, that the victim must have said 'something like, that I'll fuck you,' that

the defendant was scared and that there was no planned 'bullshit' are all clearly self-serving

hearsay. . . "(ROA-State's Motion in Limine, Item 46 at 6.)

On April 13, 2000 the trial court set the case for a jury trial on June 13, 2000. (ROA-Minute

Entry, Item 47.) At this point in time both the State and Respondent continued to maintain their

respective positions on the nature of the homicide. In fact, the State bolstered their position that the

homicide was a first degree murder when it moved the court to introduce DeBerry's diary entries to

prove that his motive for killing Lattery was not because he feared him but because "DeBerry

violently disliked homosexual behavior. DeBerry killed Lattery because he was allegedly gay. . ."

(ROA-State's Motion in Limine, Item 53.)

1    The State radically changed its position on May 12, 2000 when it told DeBerry's counsel

2    that it agreed with the defense position that their was adequate provocation for the homicide and that

3    it was now offering defendant a plea to Manslaughter. (See, Exhibit "A.") Trial counsel

4    immediately communicated to DeBerry that the State was offering a plea to Manslaughter and that

5    the State agreed that the facts supported his position that Lattery's course of conduct the day of the

6    shooting and in the weeks preceding the shooting constituted adequate provocation to shoot him.

7    (Id.; see also, DeBerry Affidavit, Appendix, Exhibit "B.") The State drafted a written plea

8    agreement which by its own terms expired if not accepted at the Trial Management Conference on

9    that same day, May 12, 2000. (Plea agreement, Appendix, Exhibit "C.") DeBerry waived his

10   constitutional rights and entered a plea of guilty to Manslaughter after consultation with his lawyer

11   and in reliance upon the State's communicated representations that he was adequately provoked.

12   (See, Exhibits A and B.) Thus, after consulting with his lawyer, DeBerry believed that the issue of

13   whether he feared Lattery was resolved and that the State's position was now clear that he was in

14   fear of Lattery when he shot him. (Id.)

15

16        During the subsequent change of plea proceeding the State represented the following factual

17   basis for Manslaughter:

18        "Lattery had been apparently following DeBerry around and parked near DeBerry's

19        parents' house and watched the house a few days before the shooting. DeBerry had

20        apparently also received a phone message from the victim on the same day of the

21        shooting which apparently used profanity and demeaning language towards

22        DeBerry, and that apparently provoked DeBerry.

23        . . . DeBerry was apparently unsettled that Lattery was possibly spreading false

24        rumors about him and following him around."

25

(R.T. 5/12/00 at 10, lines16-24; 11 lines 7-10, Appendix, Exhibit "D.")

Consistent with the parties' agreement that there was adequate provocation in this case, and to further confirm the parties' agreement with the factual basis for DeBerry's plea, defense counsel provided the following additional facts:

. . . [W]e agree that the shooting took place as a result of an ongoing problem that

developed by Mr. Lattery stalking and continuing to sexually pursue Mr. DeBerry;

that Mr. DeBerry had made clear that he wanted no part of that but, nonetheless, that

continued it continued to escalate; Mr. Lattery was unceasing in his pursuits of Mr.

DeBerry, threatening both sexually and physically to Mr. DeBerry. Lesser forms of

trying to get Mr. Lattery to cease his behavior were not successful.

There is a lot of evidence that demonstrates that Mr. Lattery had threatened

to break every bone in Mr. DeBerry's body, had threatened him sexually

repetitively, both over the phone, in person, and by written letter, which we will

produce at the appropriate hearing; that many third parties heard the threats or are

aware of the danger that was posed by Mr. Lattery to Mr. DeBerry; that Mr.

DeBerry believed Mr. Lattery , because of his personal observations, was armed

with a weapon; that in the past Mr. Lattery had tried to injure Mr. DeBerry

physically; that Mr. Lattery had a reputation for being willing to resort to physical

violence.  For all these reasons and for the other reasons identified by the state with

the immediate phone call preceding the situation which threatened Mr. DeBerry with

sexual injury and other problems the confrontation occurred. Mr. DeBerry in

essence, became overwhelmed with the provocation that had escalated and lost

control and did commit the shooting.

-6

(Exhibit D at 12, line 3 to 13, line 9.)

After hearing the state's and defense counsel's recitation of the facts, and in reliance upon his counsel's statements that the state now agreed that Lattery provoked the shooting and there was no longer a question regarding the adequacy of provocation,  (See, Exhibit B) DeBerry agreed to waive his constitutional rights and plead guilty.

> Q. BY THE COURT: Mr. DeBerry, you've heard what was said about the
> facts by both Mr. Larsen and your attorney, Mr. Griffen. Is that essentially correct,
> sir?
>
> A. Yes, sir.
>
> *                     *                     *
>
> Q. All right. How do you plead, Mr. DeBerry, guilty or not guilty?
> A. Guilty.

(Exhibit A at 13, line 23 to 14, line 10.)

Thereafter, the state and defendant again confirmed their agreement as to of the facts as set forth above:

> THE COURT: Either counsel, any additions or corrections?
>
> MR. GRIFFEN: No, sir.
>
> MR. LARSEN: No, your Honor.

(Id. at 14, lines 11-14.)

Even though the state had agreed to the foregoing facts, and had communicated to DeBerry, both through his counsel prior to the plea proceeding and overtly at the proceeding prior to the actual plea, their agreement that the facts supported adequate provocation and manslaughter, the state thereafter went upon a deliberate course of conduct designed to deprive DeBerry of the

1  benefits of his plea agreement. First, at the sentencing hearing the prosecutor elicited testimony

2  from the lead detective to indicate that DeBerry had not been stalked or threatened by Lattery,  was

3  not scared, was not harassed, and was not provoked into shooting Lattery.

4       Q.  Specifically, did they [DeBerry's parent's] report to you that Mr. Lattery

5  had been a pest or had been stalking Kyle or anything like that?

6       A.  No. Nothing like that was said.

7  (R.T. 6/13/00 at 96, lines 5-8, Appendix, Exhibit "E.")

8

9       Q.  .  .  .  [A]re there any mentions [in DeBerry's journal] of . . . Lamont

10  Lattery stalking Mr. DeBerry?

11       A. No, sir. No, there's not.

12       Q. Or threatening him?

13       A. Or concern about guns that he might have?

14       Q. No.

15  (Id. At 121, lines 14-23.)

16       Q. BY MR. HORLINGS: Now, in the DeBerry journal is there any

17  indication that Mr. DeBerry feels harassed by Lamont Lattery?

18       A. No.

19       Q. Or that he's coming to his house?

20       A. No.

21       Q. Or making unwanted phone calls?

22       A. No, sir.

23       Q. Is there any characterization of Mr. Lattery's character except that he's a

24  fucking queer and a loser?

25

A. No.

(Id. at 129, lines 8-19.)

What the state began during this line of questioning it overtly argued in violation of its own preplea representations that induced DeBerry to plead and in violation of the spirit and promises inherent in its execution of the plea agreement during its sentencing arguments. As reflected in the following passages, the state urged the court to treat this case as if DeBerry had committed an intentional murder unsupported by adequate provocation.

.      .      . [O]nly Mr. DeBerry really knows whether that message was left at all or whether this was - - this killing was initiated by him with what he said is a return phone call.    .      .      .

And I hope the Court will focus also, <u>in considering second degree murder,</u> loss of control on sudden quarrel or impulse.    .      .      .And so the question is, how long did Mr. DeBerry have to regain control? (underline added)

.      .      . [B]y that statement he had three and a half hours to cool off, erase that message, and think of a better alternative.    .      .      .

.      .      . But, nevertheless, the point is, he had more than three hours to cool off and to relax from whatever provocation was on that message. And instead what he did    .      .      . he armed himself.    .      .      .

.      .      . [T]here and a half hours was the time that he had to relax from the provocation of a message on his answering machine.

(R.T. 6/15/00 at 82-83, Appendix, Exhibit "F.")

Later in his argument, the prosecutor went as far as to suggest that the court should treat the case as a first degree murder because "Lamont Lattery was killed because he was a homosexual,

because whatever happened between these two young men made Kyle DeBerry so upset, so angry, particularly when Lamont appeared to be spreading the word of it, that he killed him." (Id. at 96, lines 6-10.)

Prior to pronouncing the sentence the trial court set forth the factors it considered in reaching its decision. The judge's comments indicate that he did, in fact, consider and utilize the state's evidence and arguments that this should be treated as a second degree murder without any provocation, in reaching his decision to impose an aggravated sentence of 16 years.

> I don't say, and I'm not going to, that Lamont Lattery caused this crisis and
> that Mr. DeBerry reacted to it.   .      .    .

(Exhibit E at 130, lines 23-25.)

> .    .    .    I wish to say one more thing, and that is that much of - - that this is, as
> pled a manslaughter case and, therefore, I am - - in calculating this I am - - I will not
> allow or I will not double-dip, if you will - - I think that was the term that's been
> used - - on either side. This a substantially mitigated - - the heat of passion is a
> mitigated circumstance in and of itself, and much of it - - some of the testimony in
> the last two days has gone to that.

(Id. at 131, lines 15-24.)

> .    .    .    the statements of the witnesses, also evidence that was presented,
> and even your own statement demonstrates to me that still a large - - a piece of you
> now still says and has always said that it was justified and that you had - - that he
> was - - he was after you and you shot.

(Id. at 132, line 23 to 133, line 1.)

### III.   WHY THIS CROSS-PETITION SHOULD BE GRANTED:

The trial court should be reversed because it abused its discretion since  the uncontested affidavits established that the Respondent relied to his detriment on the prosecutors' pre-plea representations and express representations at the change of plea proceeding as to what it agreed the facts in the case were, that Respondent was provoked into killing the decedent. The affidavits and record at the sentencing hearing established, well beyond a preponderance of the evidence, that the state breached the spirit of the plea agreement and its express pre-plea promises regarding the facts when it argued that the Respondent was not provoked and that he should be punished as a second or first degree murder. Additionally, the trial court applied an erroneous legal standard by requiring that the Respondent show prejudice at the sentencing hearing.

A.   Burden of Proof and Standard of Review:

The Petitioner bears the burden of proving the claims in a PCR by a preponderance of the evidence. *Rule 32.8 (c), Arizona Rules of Criminal Procedure.* In this matter, DeBerry submitted two affidavits which established that he was induced into waiving his constitutional rights and pleading guilty to manslaughter in reliance upon the state's position through counsel in pre-plea negotiations and during the  change of plea proceeding that he was adequately provoked as a result of Lattery's course of conduct prior to the shooting making this matter a manslaughter. (Exhibits A & B.) The state did not file any affidavits or present any evidence to contradict these facts, which are therefor established as a matter of law.

Ordinarily the grant or denial of a petition for post-conviction relief is within the trial court's discretion and will not be reversed absent an abuse of discretion. *State v Watton*, 164 Ariz. 323, 325, 793 P.2d 80, 82 (1990). In this case, however, this court should review the trial court's decision without deference and *de novo* for two reasons: (1) the judge that reviewed the PCR (Judge Dana

Hendrix) was not the same judge that heard the original change of plea and sentencing hearing

(Judge Robert VanWyck) so ordinary consideration given to the judge that hears the testimony is

inapplicable; and (2) the facts were not in dispute as the affidavits were uncontradicted and the trial

court's decision depended on an analysis of the affidavits, legal argument and testimony and

argument at the change of plea proceeding and sentencing hearing. *See, State v. Chapple,* 135 Ariz.

297, n.18, 600 P.2d 1208, 1224 n.18 (1983) ("[W]here there are few or no conflicting procedural,

factual or equitable considerations, the resolution the question is one of law or logic. Then it is our

final responsibility to determine law and policy and it becomes our duty to 'look over the shoulder'

of the trial judge and, if appropriate, substitute our judgment for his or hers.")

   B.  The evidence established that the state breached its promises.

   The trial court's ruling was that "the State did not breach the plea agreement" apparently

because, contrary to the overwhelming evidence cited above, it believed that the state had

"conceded that adequate provocation existed to support the manslaughter charge." (Minute Entry,

attached.) This ruling is clearly erroneous on two grounds: First, the evidence (as set forth *supra.*) is

contrary to the court's finding and an independent review of the record by this court should reveal

that the state did not concede that adequate provocation existed after it induced the defendant into

pleading. From that point forward the state argued consistently that DeBerry was not scared of

Lattery and was not provoked at the time that he shot him. Secondly, the trial court misinterpreted

controlling precedent which requires that the state adhere to both the explicit written promises in a

plea agreement and also the oral promises made to induce the agreement as well as the implicit

promises of the agreement or the "spirit" of the agreement.

   "The State of Arizona when acting through its attorneys and their deputies must abide by the

terms and spirit of its plea agreements, and sentencing judges must require them to do so." *State v*

1   *Romero,* 145 Ariz. 485, 487-88, 702 P.2d 714, 716 (App. 1985)(underline added.) Notwithstanding

2   *Rule 17.4, Arizona Rules of Criminal Procedure,* which requires that plea agreements be reduced to

3   writing, oral promises regarding prospective plea agreements are just as binding and enforceable as

4   executed written agreements. *State v. Morris,* 115 Ariz. 127, 564 P.2d 78 (1977); *State v. Mitchell,*

5   27 Ariz. App. 309, 554 P.2d 905(1976). Thus, contrary to the trial court's ruling, the state was

6   bound not only by the express written terms of the executed agreement, but also by its oral pre-plea

7   discussions with counsel (which were relayed to and relied upon by DeBerry [see, Exhibits A &

8   B]); its statements of agreement at the change of plea proceeding as to what it believed the facts

9   were and that adequate provocation existed.

10

11          In the seminal case on this issue, *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495

12   (1971), the Supreme Court recognized that due process requires remand for specific performance of

13   the agreement before a new sentencing judge or an opportunity to withdraw from the plea when the

14   state breaches material portions of the plea agreement's stipulations regarding sentencing. *Id.* at

15   262-63, 92 S.Ct. at 498-99. *Santobello* also provides the standard to be applied in determining

16   whether a sentence and plea should be vacated following a breach: a plea cannot stand where it

17   "rests in any significant degree" upon the promise breached or where the promise was "part of the

18   inducement or consideration" for the plea. *Id.*

19

20          A breach of a plea agreement occurs not only when the state directly breaks its promises,

21   "but also when the spirit of the inducement, reasonably inferred from the written agreement is

22   breached." *State v. Limpus,* 128 Ariz. 371, 374, 625 P.2d 960, 963 (App. 1981) *citing State v. Davis,*

23   123 Ariz. 564, 567, 601 P.2d 327, 330 (App. 1979) In *State v. Ross,* 160 Ariz. 579, 804 P.2d 112

24   (App. 1980) this court applied this very same principle in striking down the trial court's sentence

25   and remanding the case for either withdrawal of the plea or resentencing, even though the

prosecutor did not overtly advocate against the state's precise written promise to take no position at sentencing. In *Ross*, as in the present case, the state argued that it felt "compelled" to respond to the defendant's arguments for a mitigated sentence and to correct the record for the trial court. The court rejected this argument and noted that "Prosecutorial motives and justifications for failure to honor a plea agreement cannot excuse the breach of the plea agreement." *Id. at 582 citing State v. Warren,* 124 Ariz. 396, 604 P.2d 660 (App. 1979).

The *Ross* prosecutor stated that her opinion was that even with a maximum sentence (25 years) the defendant would be a young man when he was released (39 years old) and expressly stated that she was "not advocating a maximum or minimum, or the presumptive." Even though the sentencing judge stated on the record, as the judge had done in *Santobello, supra.,* that he was not influenced by the prosecutor's remarks, this court found that the sentence had to be set aside because the "spirit of the inducement" had been breached. In the instant matter, like *Ross,* the state breached the "spirit of the inducement" by advocating that there was not adequate provocation after inducing the plea by stating that it agreed there was adequate provocation in pre-plea negotiations and at the change of plea. Notwithstanding its protestations that it was merely correcting the record to indicate the actual and minimal level of provocation, the state's genuine motive was clear: to have the court sentence DeBerry as if he had committed an intentional unprovoked murder making its original agreement nothing more than a hollow promise.

C.   The state's breach cannot be considered harmless error.

The trial court's order indicates that the "Court (Judge VanWyck) clearly understood that the factual basis for the plea supported a finding of adequate provocation." (Minute Entry, attached.) This conclusion is irrelevant and applies an erroneous legal standard and suggests that the state's breach is excused because the sentencing judge did not consider its improper comments. As

1  discussed above, this is incorrect for the Respondent is under no obligation to prove prejudice from

2  the state's breach. For as both the *Ross* and *Santobello* Courts indicated, whether the judge was

3  influenced by the statements does not matter for it is reversible error not subject to harmless error

4  considerations when a prosecutor fails to live up to his or her promises. "Breaking a promise which

5  induced the defendant to plead guilty rather than exercise his right to a jury trial undercuts the

6  essential fairness and integrity of our system of justice." *State v. Gayman,* 127 Ariz. 600, 623 P.2d

7  30 (App. 1980). Even though Judge VanWyck indicated that he was influenced by the state's

8  arguments *(supra. at page 10)* it could not be held harmless error as done by Judge Hendrix under

9  prevailing law. *Ross,* 166 Ariz. At 585, 804 P.2d at 118 (reversible error even though sentencing

10  judge stated that "I'm not influenced by the County Attorney's argument".)

11

12      D.  The state was judicially estopped from arguing lack of provocation.

13       The trial court held that judicial estoppel did not apply because its erroneous view that the

14  evidence indicated that "[t]he parties argued the amount of provocation, not whether provocation

15  existed." (Minute entry, attached.) This conclusion is clearly erroneous in light of the state's specific

16  questions eliciting testimony that suggested that DeBerry was not scared of Lattery nor feared that

17  Lattery had guns, that Lattery was not stalking him nor threatening him, and arguments that Lattery

18  was killed because he was a homosexual and that the threatening phone message did not even exist

19  and that DeBerry had over three hours to cool off and was not provoked. *(supra. at 8-9.)*

20

21      In *State v. Towery,* the Arizona Supreme Court held that judicial estoppel would "preclude

22  the State from changing its version of the facts in separate proceedings involving the same matter to

23  protect the defendant's rights to due process." 186 Ariz. 168, 182 (1996). The Court explained that

24  "[j]udicial estoppel prevents a party from taking an inconsistent position in successive or separate

25

1  actions" and is " invoked to protect the integrity of the judicial process by preventing a litigant form

2  using the courts to gain an unfair advantage." *Id.*

3      The elements that must be present for a finding of judicial estoppel include: "(1) the parties

4  must be the same, (2) the question involved must be the same, and (3) the party asserting the

5  inconsistent position must have been successful in the prior judicial proceeding." *Id.* Success in the

6  prior proceeding is defined as "judicial acceptance of the first position." *Id.* Contrary to the trial

7  court's decision, all three elements existed here. At the change of plea proceeding the state

8  advocated and the trial court agreed that there was a factual basis for manslaughter based upon

9  adequate provocation. Moreover, the state agreed to the facts presented by DeBerry which formed

10  the basis for adequate provocation. The state was successful because the trial court accepted the

11  defendant's plea and found a factual basis for it. In contrast, as demonstrated herein, the state took

12  an inconsistent position in the sentencing hearing and advocated that there was no provocation, that

13  DeBerry had fabricated the whole thing and had shot Lattery because he was homosexual. This

14  violated DeBerry's due process rights and should require that he now be allowed to be resentenced

15  before a neutral judge or allowed to withdraw his guilty plea.

16

17  **IV.  CONCLUSION:**

18      The trial court abused its discretion in denying DeBerry's PCR because the uncontested

19  affidavits and evidence indicates that the state made explicit and implicit promises to DeBerry

20  which induced him to waive his rights and plead guilty. Because the state breached those promises

21  and specifically the spirit of the inducements, and also argued inconsistent factual positions at

22  sentencing, this court should vacate his sentence and remand this matter with directions to either

23  resentence him before a neutral judge or allow him to withdraw his guilty plea.

24

25  /  /  /

1    RESPECTFULLY SUBMITTED this ___ day of March, 2002

2

3

4                                    Thomas Gorman, Esq.
                                     Attorney for Respondent

5

6

7    ORIGINAL and 4 COPIES mailed
     this ___ day of March, 2002 to:
8

9    ARIZONA COURT OF APPEALS, DIVISION ONE
     Clerk's Office
10   1501 West Washington
     Phoenix, AZ 85007

11
     COPY of the foregoing mailed
12   this ___ day of March, 2002 to:

13   SUSAN V. STERMAN
     Deputy County Attorney
14   Coconino County Attorney's Office
     110 East Cherry Street
15   Flagstaff, AZ 86001

16   By ___

17

18

19

20

21

22

23

24

25

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCONINO

Danna D. Hendrix, Judge
Division 5                                                      Julie Carlson, Clerk
Date: November 7, 2001                        Jenni Wiedmann, Deputy Clerk

MINUTE ENTRY

| | |
|---|---|
| STATE OF ARIZONA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CR 99-0806 |
| | ) |
| KYLE DEBERRY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

ACTION: UNDER ADVISEMENT RULING

The Court finds the State did not breach the plea agreement. Although the arguments offered by the State as to the aggravating factors were not clearly differentiated from the issue of provocation, the State conceded that adequate provocation existed to support the manslaughter charge. Further, the Court clearly understood that the factual basis for the plea supported a finding of adequate provocation.

The Court finds that judicial estoppel does not apply. The parties argued the amount of provocation, not whether provocation existed.

A defendant's remorse can be a mitigating factor to be considered by the court. On the other hand, in State v Lawrence, 112 Ariz. 20 (1975), a case cited by Petitioner in his Memorandum re: Aggravating Factors, the court found a defendant's demonstrated gross lack of remorse and callous attitude could be considered by the Court at sentencing. That case does not answer the question whether a gross lack of remorse and callous attitude is an aggravating factor, as opposed to evidence that cancels a request for a mitigated finding of remorse.

In this case, the trial judge found lack of remorse was a substantial aggravating factor:

Petitioner "still says and has always said [the shooting] was justified and . . . he was after you and you shot. And the lack of remorse . . . is an appropriate factor."

Minute Entry, Page 2
Case No. CR 99-0806
State v. Kyle DeBerry
Date: November 7, 2001

The trial judge went on to state:

> [I]n order for you to. . . really be rehabilitated, you must acknowledge your
> real responsibility in this and full responsibility and acknowledgment in this
> And I find . . that your self-absorption is such that you see yourself as a victim
> of this in some ways and that you are not. So, I find that as an aggravating
> factor.

It is important to note that pursuant to the plea, the parties agreed the facts support a finding of adequate provocation.

A review of the entire record fails to support the trial judge's finding that lack of remorse was a proper aggravating factor.

If drug use impairs a defendant's capacity to appreciate the wrongfulness of his conduct, it is a mitigating factor. In this case, the trial judge found methamphetamine use was an aggravating factor:

> I find as another aggravating factor the methamphetamine use. I can't ignore
> the fact that this was the culture of drugs and that your involvement in it
> aggravated and horrified this nightmare to where it is. I cannot ignore the
> horrific aspects of this.

The State argues that the trial judge based his finding on Petitioner's life in a culture of drugs. A review of the entire record fails to support the trial judge's finding that methamphetamine use was a proper aggravating factor.

Based on this ruling, it is unnecessary to determine whether the trial judge failed to consider the mitigating factors presented by the defense as those factors may be presented at the sentencing hearing.

IT IS ORDERED vacating the sentence and setting sentencing for Friday, November 30, 2001 at 9:00 a.m. before Honorable Danna Hendrix at U.S. District Court, 123 N. San Francisco St., Flagstaff, Arizona. One day is set aside for the hearing.

_November 7, 2001_
Dated

_Danna Hendrix_
Judge Danna Hendrix

cc:    County Attorney
       Tom Gorman, 300 Apache Trail, Sedona, AZ 86336
       Coconino County Sheriff's Department

# Exhibit
# K





DIVISION 1
COURT OF APPEALS
STATE OF ARIZONA

**IN THE COURT OF APPEALS**
**STATE OF ARIZONA**
**DIVISION ONE**

FILED   DEC 2 6 2002

GLEN D. CLARK, CLERK

By

|  |  |
|---|---|
| STATE OF ARIZONA,<br><br>       Petitioner,<br>       Cross-Respondent,<br><br>  v.<br><br>KYLE DEBERRY,<br><br>       Respondent,<br>       Cross-Petitioner. | 1 CA-CR 01-1009-PR<br><br>DEPARTMENT D<br><br>**MEMORANDUM DECISION**<br>(Not for Publication -<br>Rule 111, Rules of the<br>Arizona Supreme Court) |

Petition for Review from the Superior Court in Coconino County

(Rule 32.9(c), Arizona Rules of Criminal Procedure)

Cause No. CR 99-0806

The Honorable Robert B. Van Wyck
The Honorable Danna D. Hendrix

**REVIEW GRANTED; RELIEF GRANTED IN PART; RELIEF DENIED IN PART**

Terence C. Hance, Coconino County Attorney                Flagstaff
    By   Susan V. Sterman, Deputy County Attorney
Attorneys for Petitioner/Cross-Respondent

Thomas A. Gorman, Esq.                                    Flagstaff
Attorney for Respondent/Cross-Petitioner

**G A R B A R I N O**, Presiding Judge

¶1      The State of Arizona petitions this Court to review the

trial court's order granting a petition for post-conviction relief

filed by Kyle DeBerry, the defendant, which vacated his sentence

and set the matter for resentencing. The defendant has filed a



cross-petition for review. In it, he requests this Court to review the trial court's order, which denied post-conviction relief on the ground that the State breached the plea agreement with the defendant. The defendant requests that we vacate his conviction and sentence. As to the petition for review, we grant review and grant relief. As to the cross petition for review, we deny relief.

## FACTUAL AND PROCEDURAL HISTORY

¶2      The defendant was charged with the first degree murder of Lamont L. The defendant contended that he acted in self-defense or, alternatively, that he had adequate provocation to kill Lamont. This argument was based upon the following facts. The defendant claimed that Lamont was a drug abuser, was violent, and had developed a sexual fixation on him. The defendant also claimed that Lamont had been stalking him, had left messages on his answering machine that were sexually demeaning and threatening, and had spread false rumors about the defendant's sexual orientation. He alleged that he was frightened of Lamont.

¶3      On October 5, 1999, Lamont left a message on the defendant's answering machine and asked the defendant to call him so they could settle their dispute. The defendant returned the call and they agreed to meet at the Little America Hotel in Flagstaff. The defendant took a handgun with him. According to the defendant, when they met, Lamont was "talking shit." When the defendant produced the weapon, Lamont threatened him further and

2

the defendant shot him. The State opposed the defendant's proposed use of self-defense as a justification for the killing. It argued that there was no evidence that the defendant was in immediate risk of physical harm and that verbal provocation alone does not justify the use of physical force. *See* Ariz. Rev. Stat. (A.R.S.) § 13-404(A), (B) (1989).

¶4      The defendant subsequently entered into a plea agreement with the State, in which he pled guilty to manslaughter, a class 2 felony. The offense carried a minimum sentence of 7 years, a presumptive sentence of 10.5 years, and a maximum sentence of 16 years. At the change of plea hearing, the prosecutor presented the factual basis for the plea as follows:

> The body of Lamont [L.] was found on October 5th of 1999 near the Little America Hotel off of Butler Road in a wooded area in east Flagstaff, Arizona. [Lamont] had apparently been killed by one gunshot wound to the upper chest area.

> A Flagstaff Police Department investigation revealed that Kyle DeBerry killed Lamont [L.] on October 5th of 1999. The body was found at the same location where the shooting was done. DeBerry admitted to Ron Schmenk, an independent polygrapher for the Flagstaff Police Department, that he had shot [Lamont] because [Lamont] had apparently been following DeBerry around and apparently had parked near DeBerry's parents' house and watched the house a few days before the shooting. DeBerry had apparently also received a phone call message from the victim on the same day of the shooting which apparently used profanity and demeaning language towards DeBerry, and that apparently provoked DeBerry and led him to load his .45 caliber black powder pistol gun and request a meeting with Lamont [L.].

> DeBerry called [Lamont] back and arranged to meet near the Little America Hotel in east Flagstaff. DeBerry

3

and [Lamont] encountered each other in the wooded area near the hotel and apparently had some conversation about the phone message that was left at the DeBerry house. DeBerry was apparently unsettled that [Lamont] was possibly spreading false rumors about him and following him around.

After some further short remarks DeBerry raised his preloaded gun and shot [Lamont] in the upper chest area. [Lamont] died shortly thereafter. A later autopsy performed by Dr. Joe Dressler revealed that [Lamont] had died because of a gunshot wound to the upper chest area.

Defense counsel added the following to the factual basis:

Just to further perhaps comment, we agree that the shooting took place as a result of an ongoing problem that developed by Mr. [L.] stalking and continuing to sexually pursue Mr. DeBerry; that Mr. DeBerry had made clear that he wanted no part of that but, nonetheless, that continued, it continued to escalate; Mr. [L.] was unceasing in his pursuits of Mr. DeBerry, threatening both sexually and physically to Mr. DeBerry. Lesser forms of trying to get Mr. [L.] to cease his behavior were not successful.

There is a lot of evidence that demonstrates that Mr. [L.] had threatened to break every bone in Mr. DeBerry's body, had threatened him sexually repetitively, both over the phone, in person, and by written letter, which we will produce at the appropriate hearing; that many third parties heard the threats or are aware of the danger that was posed by Mr. [L.] to Mr. DeBerry; that Mr. DeBerry believed Mr. [L.] because of his personal observations was armed with a weapon; that in the past Mr. [L.] had tried to injure Mr. DeBerry physically; that Mr. [L.] had a reputation for being willing to resort to physical violence. For all those reasons and for the other reasons identified by the state with the immediate phone call preceding this situation which threatened Mr. DeBerry with sexual injury and other problems the confrontation occurred. Mr. DeBerry, in essence, became overwhelmed with the provocation that had escalated and lost control and did commit the shooting.

4

 

¶5        A three-day pre-sentencing hearing was held during which both the State and the defendant presented extensive aggravation and mitigation evidence. After the hearing, the sentencing judge, Judge Van Wyck, made a lengthy statement on the record regarding the evidence presented at the hearing. He concluded as follows:

> Having said all that, I wish to say that I have found and do find the following: Start again, as I said, at the presumptive sentence, and I find the following factors -- aggravating and mitigating factors -- I wish to say one more thing, and that is that much of -- that this is, as pled, a manslaughter case and, therefore, I am -- in calculating this I am -- I will not allow or I will not double-dip, if you will -- I think that was the terms that's been used -- on either side. This is a substantially mitigated -- the heat of passion is a mitigated circumstance in and of itself, and much of it -- some of the testimony in the last two days has gone to that.

> On the other hand, I can't ignore that this was -- from the state's standpoint, that this is, in fact, a manslaughter case. So I will take this -- this is a manslaughter case. I will take the aggravating factors and the mitigating factors and that will be the sentence.

> Certainly, a substantial aggravating factor that I find -- I have considered the aggravating factors and the circumstances and I find that the emotional and financial harm -- and, of course, emotional harm is beyond belief -- that was caused to the victim's family I find as a substantial aggravating factor. And this was not disputed by anyone. Both the state and the defense agree that this is a proper aggravating factor. Their son will not come back.

> I find as a second aggravating factor, again, it's a substantial aggravating factor, that although that Mr. DeBerry does -- Mr. DeBerry, you do have some real regret in regards to your family and in regard to -- even in regard to [Lamont's family]. The statements of the witnesses, also evidence that was presented, and even your own statement demonstrates to me that still a large -- a piece of you now still says and has always said that

it was justified and that you had -- that he was -- after you and you shot. And the lack of remorse, if you will, I think is an appropriate factor. You cannot -- in order for you to responsibly begin -- not begin, but complete and really be rehabilitated, you must acknowledge your real responsibility in this and full responsibility and acknowledgment in this. And I find even after your statements that, although, there -- certainly you feel profoundly sad for your family and others, that your self-absorption is such that you see yourself as a victim of this in some ways and that you are not. So I find that as an aggravating factor.

I find as another aggravating factor the methamphetamine use. I can't ignore the fact that this was the culture of drugs and that your involvement in it aggravated and horrified this nightmare to where it is. I cannot ignore the horrific aspects of this.

I find as mitigating factors that, of course -- and I do find this as a mitigating factor -- that there are no prior convictions, nor any prior arrests. I don't find that as a substantial mitigating factor because it's clear that you were living in a somewhat unlawful situation over the last several years prior to that.

I find that you also, as a mitigating factor, have a supportive family. Quite supportive family. A few of the people have come before me and do as you saw today and yesterday. The people that came in here to be sentenced and sentenced for -- almost every single one of them for drug-related offense, you didn't see families in here. On the other hand, I can't find that as a substantial mitigating factor because you're an adult. You're 27, I believe -- 27 years old when this took place. I do believe that you are, as part of that -- and because of your supportive family and, and I already indicated, because of the diagnosis I believe you have some real chances of rehabilitation, but that is going to take some long time.

The probation department, by the way, and this has been largely -- haven't spoken about it much, but the probation department in their recommendation found only the aggravating factor of physical, emotional, and financial harm, and the only mitigating factor is no prior felony convictions. And this suggests, as well as my findings and statements of both counsel, how troubling



this case was and how difficult it was for all of us to grapple with and how difficult it was. And it -- clearly, it's been incredibly difficult for me to deal with what the law requires me to do and what the -- what has happened here.

I find having found several, the three substantial aggravating factors, I'm sorry, and the mitigating factors, that that does -- that does -- that those combination is sufficiently substantial to warrant an aggravating sentence. I do not believe that the maximum -- I will not impose a maximum on this case. I do impose the aggravated term of 16 years in prison. I think that that -- using those factors is appropriate; that by that time you will be -- you will still be able to have a very real life; and that that otherwise fits the principles of sentencing and is -- fits the factors that I have set forth.

¶6     Through counsel, the defendant filed a petition for post-conviction relief. He first claimed that the State breached the plea agreement by presenting evidence at the pre-sentencing hearing that no provocation existed that would have caused the defendant to shoot Lamont, suggesting that the defendant's actions more realistically constituted second degree murder. The defendant argued that when he agreed to plead guilty to manslaughter, he was falsely led to believe that the question of provocation was no longer a disputed issue. He therefore claimed that when the State presented evidence on this issue, it breached the spirit, if not the letter, of the plea agreement. The defendant requested that the trial court vacate the plea and reinstate the charges.

¶7     Alternatively, the defendant alleged that Judge Van Wyck had abused his discretion by finding as aggravating factors the defendant's lack of remorse and methamphetamine use. The defendant

also contended that the judge failed to properly consider numerous mitigating factors in sentencing him. The defendant requested that he be resentenced. After the State filed a response to the petition for post-conviction relief, the matter was argued before a different judge, Judge Hendrix.

¶18        Following oral argument, Judge Hendrix found that the State had not breached the plea agreement. However, with little explanation, she agreed with the defendant that Judge Van Wyck had improperly found lack of remorse and methamphetamine use as substantial aggravating factors. Judge Hendrix vacated the defendant's sentence and remanded the matter for resentencing. The State filed a petition for review with this Court challenging the order of Judge Hendrix vacating the defendant's sentence. The defendant filed a cross petition for review challenging the order dismissing his claim for breach of the plea agreement. The resentencing was stayed pending the outcome of the petition for review.

## DISCUSSION

¶19        "A petition for post-conviction relief is addressed to the sound discretion of the trial court and the decision of the court will not be reversed unless an abuse of discretion affirmatively appears." *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986). We find no abuse of discretion in Judge Hendrix's dismissal of the defendant's claim that the State

8

breached the plea agreement.  However, we agree with the State that Judge Hendrix abused her discretion by finding that Judge Van Wyck had used two improper aggravating factors when sentencing the defendant.  We therefore reverse that portion of the order vacating the defendant's sentence, and we reinstate the original sentence imposed.

I.  Cross-Petition for Review and Breach of the Plea Agreement

¶10     As a threshold matter, we must first consider whether the State breached the plea agreement as alleged by the defendant's cross petition for review.   The defendant claims that after he pled guilty to manslaughter, the State attempted to undermine the factual basis of the plea at the pre-sentencing hearing by presenting evidence that there was not adequate provocation for the shooting.  He claims that by entering into the plea agreement, the State promised to accept the factual basis for the plea, that he relied to his detriment on this promise, and that the State breached its promise when it introduced contradictory evidence.  He relies on the case of *Santobello v. New York*, 404 U.S. 257 (1971), and its progeny to support his position.   As a related matter, the defendant argues that the State was judicially estopped from presenting this evidence.  The State responds that the defendant did not object to the introduction of this evidence and therefore waived the issue.  The State further asserts that, in any event, it

did not breach the agreement and that judicial estoppel does not apply in this case.

¶11     In *Santobello*, a prosecutor agreed to make no recommendation about sentencing. *Id.* at 258. At the sentencing hearing, however, a different prosecutor was present and recommended a one-year sentence. *Id.* at 259. Finding a breach of the agreement, the United States Supreme Court reasoned that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. Arizona has followed the federal cases interpreting *Santobello*. The Arizona cases hold that a breach of a plea agreement occurs not only when the State directly breaks its promise, but also when the spirit of the inducement, reasonably inferred from the written agreement, is breached. *See State v. Sodders*, 130 Ariz. 23, 28-29, 633 P.2d 432, 437-38 (App. 1981); *State v. Davis,* 123 Ariz. 564, 567, 601 P.2d 327, 330 (App. 1979). When a breach occurs, a defendant need not show prejudice, and the error is not harmless. *See State v. Ross*, 166 Ariz. 579, 584, 804 P.2d 112, 117 (App. 1990).

¶12     We note that counsel did not object to the introduction of the evidence that he claims was a breach of the agreement, either before or at the time it was presented. However, in his argument to the court at the close of the pre-sentencing hearing,

counsel did raise this issue and, citing *Santobello,* complained that the State was attempting to undermine the factual basis of the plea to the detriment of the defendant.  Waiver aside, we find no breach of the agreement.

¶13     The plea agreement does not contain a stipulation as to sentencing, but specifically states that the "sentence [is] left to the discretion of the court."  It is true that the State presented evidence to demonstrate its position "that there [was] really barely a statutory minimum of issues of provocation."  Such evidence was primarily presented through the testimony of the investigating officer, Sergeant Treadway, who stated that he believed that this was a first degree or second degree murder case. For example, he testified that during his investigation, he found no indication that Lamont had threatened or harassed the defendant. Sergeant Treadway also testified that the defendant told him that he initiated the meeting with Lamont and that the defendant stated that he was not afraid that Lamont would attack him with a gun when he went to meet him at the Little America Hotel.  The sergeant admitted that he was "resistant to the affect of that provocation causing Mr. DeBerry to lose control" and that his "position [was] that Mr. DeBerry should not have lost control and should not have killed Mr. [L.]."

¶14     On the other hand, the defendant presented substantial evidence to counter this position and show that the provocation was

11

great.   For example, the defendant's girlfriend testified that Lamont had been stalking and harassing the defendant for several months, had threatened the defendant, and had left a note for him stating, "you better watch your back."  His girlfriend's daughter testified that when she was riding with the defendant on his motorcycle, Lamont followed them and tried to run them off the road with his vehicle.  The defendant's mother testified that Lamont had sent threatening letters to the defendant and had left demeaning and harassing phone messages on their answering machine, which became increasingly aggressive over time.  The evidence also showed that the defendant knew that Lamont had weapons in his possession and that, as the conflict escalated, he became more fearful for himself, his girlfriend, and his girlfriend's daughter.

¶15     The law is established that it is proper for a court to consider the nature and circumstances of the offense charged.  *See State v. Myers*, 117 Ariz. 79, 90-91, 570 P.2d 1252, 1263-64 (1977) (holding that when a defendant was convicted of armed robbery, it was proper to consider the circumstances of the robbery during sentencing, including the facts that the defendant fired a sawed-off shotgun and was a violent and aggressive person with "no regard for human life"); *State v. Phillips*, 102 Ariz. 377, 381, 430 P.2d 139, 143 (1967) (holding that in sentencing a defendant, it was proper to consider the circumstances of the offense in sentencing a defendant, including the nature of the sexual crime committed);

12

State *v. Dixon*, 21 Ariz. App. 517, 518-19, 521 P.2d 148, 149-50 (1974) (holding that it was proper for the court to consider the crime details contained in the police report and the defendant's past criminal conduct).

¶16     In this case, the evidence concerning the degree of provocation involved was part of the evidence of the circumstances surrounding the commission of the offense. This evidence was relevant to the issues of aggravation and mitigation, and Judge Van Wyck properly considered it in sentencing. Moreover, the defendant had the opportunity to present evidence that countered the evidence offered by the State to show that the degree of provocation was substantial and led to the commission of the offense.

¶17     We disagree with the defendant's argument regarding Judge Van Wyck's comment that he would not "double-dip." Although the defendant claims that Judge Van Wyck meant that he would not consider the defendant's evidence of provocation as a mitigating factor because the crime of manslaughter was already "mitigated," the judge also indicated that he was treating this as a manslaughter case, not something of a more serious nature. We interpret this to mean that the judge agreed to not consider the degree of provocation as either a mitigating or aggravating factor. We find no breach of the plea agreement by the State. Finally, because of our resolution of this issue, we need not consider whether judicial estoppel applies in this case.

II. <u>Petition for Review and Use of Improper Aggravating Factors</u>

¶18      In order to determine whether Judge Hendrix abused her discretion by granting partial post-conviction relief, we must first determine if Judge Van Wyck erred by finding lack of remorse and methamphetamine use as aggravating factors during sentencing. The general rule is that "[w]e will not disturb a sentence that is within the statutory range absent an abuse of discretion." *State v. Russell*, 175 Ariz. 529, 534, 858 P.2d 674, 679 (App. 1993). "The trial court does not act arbitrarily if it investigates all the facts relevant to sentencing and finds aggravating and mitigating factors within the statutory guidelines." *State v. Harvey*, 193 Ariz. 472, 477, 974 P.2d 451, 456 (App. 1998). There is no dispute that Judge Van Wyck made an adequate investigation into the facts, given that he conducted a three-day pre-sentencing hearing. As explained below, we believe that Judge Van Wyck did not abuse his discretion when he found lack of remorse and methamphetamine use as aggravating factors. *See* A.R.S. § 13-702(C)(17) (Supp. 1999) (in addition to using the statutory aggravating factors, a court may use "[a]ny other factors which the court may deem appropriate to the ends of justice"). Accordingly, Judge Hendrix erred when she vacated the defendant's sentence based on improper aggravating factors.



A.   Lack of Remorse

¶19      The State argues that Judge Van Wyck properly used the defendant's lack of remorse in aggravating his sentence and that Judge Hendrix erred when she found that it was an improper aggravating factor.   The defendant claims that because his actions were provoked by the victim and that provocation justified the shooting, Judge Van Wyck should not have considered his lack of remorse as an aggravating factor.   He relies on *State v. Tinajero*, 188 Ariz. 350, 357, 935 P.2d 928, 935 (App. 1997), *disapproved of on other grounds, State v. Powers*, 200 Ariz. 363, 26 P.3d 1134 (2001), to support his position.   We agree with the State.

¶20      Lack of remorse and a callous attitude are proper aggravating factors.   *See State v. Lawrence,* 112 Ariz. 20, 23-24, 536 P.2d 1038, 1141-42 (1975).   It is within the province of the trial court to determine a defendant's remorse or lack thereof.   *See State v. Germain*, 150 Ariz. 287, 289, 723 P.2d 105, 107 (App. 1986).

¶21      The *Tinajero* case is distinguishable.   There, the defendant maintained his innocence through his sentencing, making "his failure to acknowledge guilt '. . . irrelevant to a sentencing determination,' and 'offen[sive] [to] the Fifth Amendment privilege against self-incrimination.'" *Tinajero*, 188 Ariz. at 357, 935 P.2d at 935 (quoting *State v. Hardwick,* 183 Ariz. 649, 656, 905 P.2d 1384, 1391 (App. 1995)).   By contrast, here, the defendant pled

15

guilty to killing Lamont.  Although the factual basis for the plea demonstrated that the defendant was provoked by the victim, the defendant's callous attitude and his lack of remorse about the shooting were striking.

¶22     The defendant and the victim were good friends before the events leading up to the shooting.  However, following the shooting, the defendant did not call the police.  Instead, he went to a friend's home and watched television, not mentioning the incident.  When Sergeant Treadway first interviewed the defendant and told him of Lamont's death, the defendant did not admit to the shooting.  However, he told the sergeant that he had previously said that he should "kill . . . that son of a bitch" and that he was concerned that because Lamont was now dead, he would be implicated in the crime.  He told the sergeant that Lamont's death made him happy and that Lamont was "a son-of-a-bitch" who probably deserved it.

¶23     Dr. Packard, a psychologist, testified that he visited the defendant in jail on two occasions.  During the first visit, the defendant showed no remorse, took no responsibility for the crime, and told Dr. Packard that the shooting was all Lamont's fault.  During the second visit, the defendant expressed some remorse for Lamont's mother.  Dr. Bayless, another psychologist who interviewed the defendant, testified that the defendant expressed some signs of remorse because of the problems he caused others.

16

The defendant's mother testified that the defendant merely expressed remorse for "everything that happened" and for the "whole situation."

¶24        During sentencing, the defendant told the court,

> I still have a lot of conflict and a lot of confusion when it comes to my feelings on what took place with myself and Lamont and how remorseful I really am about his death. He caused me not just a few days or a few letters that you've seen of hardship, but years of continual letters. And we've gone into this, too, and it sounds like a broken record and running over the same thing so I'm not going to go in that direction either.

> As far as remorse for the family, I couldn't be more sorry. If you'd allow, I'd like to turn around and apologize to [Lamont's family] if that would be inappropriate [sic].

> I'm, sorry. I -- I can't apologize enough or express the deep feelings of sorrow and loss that you must be feeling.

¶25        We believe that the record supports Judge Van Wyck's use of the defendant's lack of remorse, including his refusal to take any responsibility for the shooting, as an aggravating factor. The defendant initially lied to the police about his involvement in the crime and told the police that he was happy that Lamont was dead and that Lamont deserved to die. Although the defendant expressed remorse for the family of the victim and his own family and friends, he did not express remorse for Lamont's death. Further, the defendant did not acknowledge that any of his own actions may have contributed to the deadly outcome. The record supports the conclusion that the defendant exhibited a callous and unsympathetic

attitude to the victim.  We find that it was proper to use lack of remorse as an aggravating factor in this case.  Accordingly, Judge Hendrix erred by finding an abuse of discretion by Judge Van Wyck on this issue.

B.   Methamphetamine Use

¶26     The State argues that it was proper for Judge Van Wyck to consider the defendant's drug use as an aggravating factor in sentencing.  It contends that the trial court inartfully referred to the defendant's "methamphetamine use" as an aggravating factor when, in reading the sentencing transcript as a whole, it is clear that Judge Van Wyck was aggravating the sentence based upon the defendant's extensive involvement with the "culture of drugs."  The defendant argues that there was no evidence that he was using methamphetamines when the shooting occurred or that the shooting was connected in some way to a drug transaction.  He further claims that this drug addiction coupled with his diagnosis of Attention Deficit Hyperactivity Disorder (ADHD) should have been found as a mitigating factor by Judge Van Wyck.  We disagree.

¶27     The evidence showed that the defendant admitted, in a taped interview with Sergeant Treadway, that he was using methamphetamines either the day of the shooting or one or two days prior thereto.  Both the defendant and Lamont obtained drugs from each other and shared them.

18

¶28     Dr. Packard testified that the defendant told him that he had used methamphetamines daily for eight to ten years, even after he was arrested.  He stated that the defendant had never been to a drug counselor before coming to him.  Dr. Packard also testified that the defendant had a mild form of ADHD, which can make a person more prone to anger and violence.  He opined that a person with this disorder who takes methamphetamines "in excess" will become more impulsive.  Both the defendant's mother and father were concerned about the defendant's ongoing, but untreated, drug problem.  The defendant admitted to Dr. Bayless that his drug addiction had caused problems for others in his life.

¶29     The record is replete with evidence that the defendant was deeply immersed in, as the court stated, "the culture of drugs."  This had a detrimental effect both on his ability to deal with his problems with Lamont and on his psychological state both prior to and during the commission of the offense.

¶30     It is proper to "consider a defendant's criminal character and history" in determining a sentence. *State v. Shuler*, 162 Ariz. 19, 21, 780 P.2d 1067, 1069 (App. 1989).  Moreover, it is proper for the court to impose a lengthy prison sentence to protect society when a defendant is addicted to dangerous drugs, has not completed any rehabilitation program, and has consistently returned to his addictive behavior.  *See State v. De la Garza*, 138 Ariz. 408, 409-10, 675 P.2d 295, 296-97 (App. 1983), *disagreed with on*

19

*other grounds, State v. Thurlow*, 148 Ariz. 16, 19, 712 P.2d 929, 932 (1986) (explaining that the trial court did not abuse its discretion when sentencing the defendant to a prison term sufficiently long enough to complete drug rehabilitation).

¶31     The defendant claims and Judge Hendrix agreed that his drug use and ADHD condition should have been used as mitigating factors under A.R.S. § 13-702(D)(2) (Supp. 1999) ("The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution."). However, Judge Van Wyck was only required to consider evidence of the defendant's drug use and his ADHD; he was not required to find that they were mitigating factors. *See State v. Carbajal*, 177 Ariz. 461, 463, 868 P.2d 1044, 1046 (App. 1994). Further, the defendant's position was not that he shot Lamont because the defendant was impaired by drugs, but because of Lamont's actions. As the defendant told Dr. Packard, "[i]f he hadn't been doing these things to me, I wouldn't have done this." We believe that the sentencing judge acted within his discretion when he found that the defendant's long-term involvement with methamphetamines played a part in the commission of this offense and that it was proper to aggravate his sentence with this factor as well. Accordingly, Judge Hendrix erred by vacating the defendant's sentence.

## CONCLUSION

¶32     Based on the foregoing, we conclude that the State did not breach the plea agreement with the defendant.   We further determine that Judge Van Wyck did not abuse his discretion by aggravating the defendant's sentence based on lack of remorse and methamphetamine use.   Judge Hendrix erred by vacating the defendant's sentence.   Accordingly, we grant review, grant relief on the petition for review, deny relief on the cross-petition for review, and reinstate the sentence originally imposed upon the defendant.

_____
WILLIAM F. GARBARINO, Presiding Judge

CONCURRING:

_____
JON W. THOMPSON, Judge

E H R L I C H, Judge, dissenting

¶33     I dissent because I conclude that the superior court did not abuse its discretion in granting DeBerry's petition for post-conviction relief.   At the very least, it is unclear to what the sentencing court referred when, in discussing the aggravating factors, it declared that "the culture of drugs" "aggravated and horrified this nightmare to where it is."   Rather, it appears that

21

the sentencing court well may have been reflecting its own atti-
tudes than a more objective consideration of the record in this
case.

SUSAN A. EHRLICH, Judge

DIVISION 1
COURT OF APPEALS
STATE OF ARIZONA

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION ONE

FILED   DEC 2 6 2002

GLEN D. CLARK, CLERK

By

STATE OF ARIZONA,

      Petitioner,
      Cross-Respondent,

    v.

KYLE DEBERRY,

      Respondent,
      Cross-Petitioner.

1 CA-CR 01-1009-PR

DEPARTMENT D

COCONINO County
Superior Court
No. CR 99-0806

O R D E R

The above mentioned matter was duly submitted to the Court. The Court has this day rendered its memorandum decision.

IT IS ORDERED that the memorandum decision be filed by the Clerk.

IT IS FURTHER ORDERED that a copy of this order, together with a copy of the memorandum decision, be sent to each party appearing herein or to the attorney for such party, and to the Honorable Robert B. Van Wyck and the Honorable Danna D. Hendrix, Judge.

DATED this _26th_ day of _December_, 2002.

WILLIAM F. GARBARINO, Presiding Judge



Page 2

1 CA-CR 01-1009 PR

December 26, 2002

COCONINO COUNTY
SUPERIOR COURT
CR 99-0806


A true copy of the foregoing
order was mailed
December 26, 2002 to:

Mr. Randall M. Howe, Chief Counsel
Assistant Attorney General
Criminal Appeals Section
1275 West Washington
Phoenix, AZ 85007-2997
and

Ms. Susan V. Sterman
Deputy County Attorney
110 East Cherry Avenue
Flagstaff, AZ 86001
Attorneys for Petitioner,
Cross Respondent

Mr. Thomas A. Gorman
Attorney at Law
113 East Birch Avenue
Flagstaff, AZ 86001
Attorney for Respondent,
Cross Petitioner

Honorable Terence C. Hance
COCONINO COUNTY ATTORNEY
Coconino County Courthouse
100 East Birch
Flagstaff, AZ 86001-4696

Honorable Robert B. Van Wyck, Judge
COCONINO COUNTY COURTHOUSE
100 West Birch
Flagstaff, AZ 86001

Page 3

1 CA-CR 01-1009 PR


Honorable Danna D. Hendrix
COCONINO COUNTY SUPERIOR COURT
COCONINO COUNTY COURTHOUSE
100 East Birch Avenue
Flagstaff, AZ 86001


Glen D. Clark , Clerk
By

Deputy Clerk

# Exhibit
# L

Thomas Gorman, Esq., SBN 01121
113 East Birch Ave.
Flagstaff, AZ 86001
Tel: (928) 779-4509
Attorneys for Respondent/Cross-Petitioner

## IN THE ARIZONA COURT OF APPEALS

### DIVISION ONE

| | |
|---|---|
| THE STATE OF ARIZONA, | 1CA-CR 01-1009-PR |
| Petitioner/Cross-Respondent, | RESPONDENT'S PETITION FOR REVIEW |
| vs. | |
| KYLE DEBERRY, | Coconino County Superior Court Case No. CR 99-0806 |
| Respondent/Cross-Petitioner. | |

Respondent, Kyle DeBerry, through counsel, pursuant to Rules 32.9(g) and 31.19, *Arizona Rules of Criminal Procedure,* hereby petitions the Arizona Supreme Court for Review of the Court of Appeals' Memorandum Opinion filed December 26, 2002 (attached hereto as Exhibit A) reversing the trial court's decision vacating Respondent's aggravated sentence of 16 years due to the sentencing judge's consideration of improper aggravating factors as follows:

## I.   ISSUES PRESENTED FOR REVIEW

A. Whether the Court of Appeals erred by holding that the post conviction court abused its discretion when it determined that the original sentencing judge had improperly considered Kyle DeBerry's drug addiction and supposed lack of remorse as aggravating factors when it sentenced him to an aggravated prison term for his manslaughter conviction?

Appellant is not requesting review of the following issue:

A. Whether the Court of Appeals erred when it denied Respondent's Cross Petition for Review challenging whether the State breached the plea agreement in this manslaughter case by arguing

at sentencing that the homicide was intentional and not the result of adequate provocation?

## II.   FACTS MATERIAL TO THE ISSUE PRESENTED

A. Procedural History:

Kyle DeBerry was indicted by the Coconino County Grand Jury with first degree premeditated murder on October 14, 1999. (ROA-Item 3.) DeBerry maintained consistently during the police interrogation, pretrial proceedings and sentencing, that he acted in self-defense, or alternatively his actions were in the heat of passion. A manslaughter, in that the victim, Lamont Lattery, had adequately provoked DeBerry by persistently stalking and threatening him while pursuing an unwanted homo-sexual relationship. Following pretrial proceedings and negotiation DeBerry agreed to plead guilty to manslaughter. (ROA-Item 60.) The original trial judge, Robert VanWyck, held a three day sentencing hearing and on June 15, 2000 sentenced DeBerry to an aggravated term of 16 years. (ROA-Items 79, 81, 84 & 85; R.T. 6/13-15/00.) Contrary to the law and evidence, Judge VanWyck specifically found as aggravating circumstances: 1) that DeBerry was addicted to methamphetamine and involved in the "drug culture"; and 2) that DeBerry exhibited a lack of remorse and had not accepted responsibility for his actions. (R.T. 6/15/00 at 132-33.)

DeBerry timely filed a Petition for Post Conviction Relief ("PCR") supported with uncontested Affidavits challenging the propriety of his sentence due to Judge VanWyck's improper consideration and utilization of the above noted aggravating circumstances and the court's refusal to consider substantial mitigation evidence presented by the defense. (ROA-Petition.) Following briefing, DeBerry's Petition was argued before Judge Dana Hendrix[1] on October 16, 2001. (ROA-Item 124.) On November 7, 2001 Judge Hendrix issued an Order granting DeBerry relief and ordered that the matter be set for resentencing because the record

Subsequent to sentencing the case was reassigned to Judge Hendrix, Coconino County Superior Court, Div. One.

and law did not support utilizing DeBerry's lack of remorse and drug addiction as aggravating factors in this case. (Minute Entry, attached hereto as Exhibit B.) The trial court found it unnecessary to address Judge VanWyck's refusal to consider the proffered mitigation. (Id.)

The State filed a Petition for Review from Judge Hendrix' ruling with the Court of Appeals which issued its Memorandum Decision on December 26, 2002. (Decision, attached hereto as Exhibit A.) The Court of Appeals, in a 2 to 1 split decision, held that Judge VanWyck had not abused "his discretion by aggravating the defendant's sentence based on lack of remorse and methamphetamine use." (Id. at 21.) The Court of Appeals did not directly address the issue of Judge VanWyck's refusal to consider DeBerry's proffered mitigation but implied that he had considered and rejected the proffered mitigation even though the record does not support such a conclusion. (Id. at 20.)

B.  Relevant Facts:

On October 5, 1999 Lamont Lattery was killed as a result of a single gunshot wound to his chest. In the preceding months Lattery had aggressively pursued an unwanted homo-sexual relationship with DeBerry. Although DeBerry had repeatedly rejected Lattery's advances  and ended their previous friendship, Lattery's infatuation and obsession continued up to the day of his death. Prior to this time Lattery followed and stalked DeBerry; parked his vehicle near and watched over DeBerry's parents' house as often as three times per week; threatened to break every bone in DeBerry's body; threatened DeBerry sexually repetitively, both over the phone, in person and by written letter; and more than once tried to physically injure DeBerry. Lattery had also been spreading rumors that the two were involved in a homo-sexual relationship. DeBerry reasonably believed that Lattery was regularly armed with a weapon as he had seen him with a gun on several previous occasions. On the day of the shooting Lattery telephoned DeBerry leaving a message in which he threatened DeBerry using profanity and demeaning language. This led to a meeting between the two during which DeBerry became overwhelmed with the

ongoing provocation that had escalated to the point where he lost control shooting Lattery. (R.T. 5/12/00 at 11-14; R.T. 6/13/00 at 26-27, 30-31, 42-43, 234; R.T. 6/14/00 at 63-75, 82, 130-37; R.T. 6/15/00 at 15-16, 20-22, 40.) DeBerry maintained that he acted in self defense. He pled guilty to and should have been sentenced for manslaughter based upon adequate provocation, but was sentenced as if he committed second degree murder.

## II.    WHY THIS COURT SHOULD GRANT REVIEW

**A. THIS IS A CASE OF FIRST IMPRESSION IN ARIZONA. THE ARIZONA COURT OF APPEALS ERRED WHEN IT HELD THAT THE SENTENCING JUDGE PROPERLY CONSIDERED KYLE DEBERRY'S LACK OF REMORSE AS A VALID AGGRAVATING CIRCUMSTANCE UNDER A.R.S. § 13-702(C)(19) AFTER HE PLED GUILTY TO MANSLAUGHTER BASED UPON ADEQUATE PROVOCATION. THE COURT'S CONSIDERATION OF LACK OF REMORSE AS AN AGGRAVATING CIRCUMSTANCE VIOLATED DEBERRY'S RIGHT TO REMAIN SILENT UNDER THE FIFTH AMENDMENT, U.S CONSTITUTION AND ARIZONA CONSTITUTION, ARTICLE II, §10. NEITHER THE LAW NOR THE RECORD SUPPORTS THE COURT OF APPEALS' DECISION.**

### (1) The Court of Appeals incorrectly applied the standard of review in this case.

The grant or denial of a petition for post-conviction relief is within the trial court's discretion, and will not be reversed unless an abuse of discretion affirmatively appears. *State v. Watton*, 164 Ariz. 323, 325, 793 P.2d 80, 82 (1990). An appellate court will not disturb the trial court's ruling on a petition for post conviction relief absent an abuse of discretion. *State v. Wiley*, 199 Ariz. 242, 16 P.3d 803 (App. 2001). Judge Hendrix vacated the sentence imposed by Judge VanWyck based upon her review of the factual record. The court did not base its decision on an interpretation of law or policy.[2] Following oral argument on the Petition, the court assessed the facts and found that, "[a] review of the entire record fails to support the trial judge's finding that lack of remorse was a proper aggravating factor [and] a review of the entire record fails to

---

Judge Hendrix' decision indicates that she assumed, without deciding, that the law permitted utilizing lack of remorse and drug addiction as aggravating circumstances under A.R.S § 13-702(C)(19). (See Exhibit B.)

support the trial judge's finding that methamphetamine use was a proper aggravating factor." (Exhibit B.) Notwithstanding that this decision was based upon the court's finding of fact, the Court of Appeals gave no deference to the court's conclusions and in essence conducted a *de novo* review of the record. Instead of deferentially reviewing Judge Hendrix ruling on the Petition, the court "determine[d] if Judge VanWyck erred by finding lack of remorse and methamphetamine use as aggravating factors." (Exhibit A at 14.)

### (2) No Arizona precedent permits consideration of lack of remorse as an aggravating circumstance. Lack of remorse is irrelevant and consideration of it as an aggravator violates DeBerry's constitutional rights.

The Court of Appeals relied upon this court's opinion in *State v. Lawrence,* 112 Ariz. 20, 23-24, 536 P.2d 1038, 1041-42 (1975) to support its conclusion that lack of remorse and a callous attitude *may* be considered an aggravating factor. (Exhibit A at 15.) That reliance is misplaced. As Judge Hendrix recognized: "[t]hat case does not answer the question whether a gross lack of remorse and callous attitude is an aggravating factor, as opposed to evidence that cancels a request for a mitigated finding of remorse." (Exhibit B.)

In *Lawrence* the defendant was convicted at trial of second degree murder and received a sentence of 99 years to life. This court held that the sentence was not excessive nor an abuse of discretion and remarked on trial testimony indicating the defendant's callousness and lack of remorse. The court also discussed the presentence report writer's observations which lead him to opine that the defendant was not amenable to probation but needed to receive a lengthy sentence based upon other considerations. However, this court never specifically held that lack of remorse was a proper aggravating circumstance. In fact, research reveals no Arizona appellate decision which directly holds that lack of remorse may be specifically considered as an aggravating factor. Moreover, in the context of a pleading defendant, no opinion holds (as the Court of

Appeals did here) that lack of remorse is properly considered as an aggravating factor. (Exhibit A at 15-16.) *Cf State v Hardwick,* 183 Ariz. 649, 656, 905 P.2d 1384, 1391 (App. 1995)("We do not decide here whether lack of remorse can be an aggravating factor following a guilty plea by a defendant.")

*State v Lawrence* was decided before the major revisions to the Arizona Criminal Code in 1978 when our legislature "promulgated the comprehensive sentencing scheme" set forth in A.R.S. § 13-702. *Cf State v Just,* 138 Ariz. 534, 551, 675 P.2d 1353, 1370 (App. 1983). The Court of Appeals relied upon A.R.S. § 13-702(C)(17)(1999)[3] as authorizing both lack of remorse and drug use as aggravating factors. (Exhibit A at 14.) That provision states that the court may consider in aggravation "[a]ny other factors which the may deem appropriate to the ends of justice." That provision, however, is limited in its reach to constitutionally permissible relevant factors. The catch all aggravator is limited and "can include any factor that relates to the character or background of the defendant or the circumstances surrounding the commission of the crime *that increase the crime's guilt or enormity or adds to its injurious consequences.*" *State v Elliget,* 177 Ariz. 32, 36, 864 P.2d 1064, 1070 (App. 1993)(emphasis added). Neither drug use nor lack of remorse increase a crime's guilt or injury. This is equally true in a case, such as this, where the defendant and all the parties agree that his actions were legally provoked.

Since *Lawrence* the Arizona appellate decisions have steadfastly held that a defendant's refusal to admit guilt is irrelevant at sentencing and to use it against a defendant who maintains his innocence violates the Fifth Amendment. For example, this court remarked in *State v Carriger,* 143 Ariz. 142, 162, 692 P.2d 991, 1011 (1984) that: "[a] defendant is guilty when

The current version of the catch all aggravator is set forth in A.R.S. § 13-702(C)(19).

convicted and if he chooses not to publicly admit his guilt, that is irrelevant to a sentencing determination." Similarly, in *State v. Tinajero, 188 Ariz. 350, 935 P.2d 928 (1997)* the court of appeals reversed a sentence aggravated for lack of remorse where the defendant had maintained his innocence at trial and did not admit guilt at sentencing. The court stated: "When a convicted person maintains his innocence through sentencing, as Tinajero did here, his failure to acknowledge guilt 'is irrelevant to a sentencing determination' and 'offends the Fifth Amendment privilege against self-incrimination.'" *Id* at 195. *See also, State v. Hardwick,* 183 Ariz. 649, 656, 905 P.2d 1384, 1391 (App. 1995)(rejecting the state's invitation to hold that the Fifth Amendment is not violated by utilizing lack of remorse as an aggravator when the defendant remains silent at sentencing); *State v. Holder,* 155 Ariz. 80, 83, 745 P.2d 138, 140-41 (App. 1995) *vacated in part on other grounds* 155 Ariz. 83, 745 P.2d 141 (1987) (holding it fundamental error to punish a defendant for failing to admit guilt at sentencing).

In this case the Court of Appeals distinguished *Tinajero* on the illogical basis "that defendant pled guilty to killing Lamont." (Exhibit A at 16.) First, DeBerry actually plead guilty to manslaughter, which is causing the death of another "upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim." A.R.S. § 13-1103(A)(2). He plead guilty to killing the victim after being provoked and acting with what amounts to incomplete self-defense. The record amply supported that he was provoked. This does not mean that he also waived his Fifth Amendment rights at sentencing and was required to express remorse to avoid an aggravated sentence. A guilty plea is not a waiver of a defendant's right to remain silent at sentencing. *Mitchell v. United States,* 526 U.S. 314 (1999). Under the Court of Appeals' rationale DeBerry would necessarily have to change the accepted factual and legal position that his actions were legally provoked at sentencing to avoid a harsher penalty. This is illogical.

Simply because he pled guilty to being adequately provoked does not mean that he now must

necessarily show remorse for his actions. When a person is convicted after a plea, his failure to

provide an explanation beyond that given at the change of plea proceeding is irrelevant to a

sentencing determination. Guilt is not an issue at a sentencing proceeding.

A nearly identical issue was reached in *Brake v. State*, 939 P.2d 1029, 1036 (Nev. 1997)

where the Nevada Supreme Court vacated a defendant's sentence for first degree murder because

it was aggravated for lack of remorse. At trial and sentencing the defendant maintained that he

had killed the victim in self-defense. The jury rejected his testimony and convicted him as

charged. The Nevada Supreme Court held that this conviction did not automatically mean that

defendant was required to waive his rights and admit full responsibility and guilt. As in this case,

the Nevada court held that utilizing the defendant's continuing position that his actions were

legally justified as an aggravating factor violated the Fifth Amendment. This conclusion is even

more applicable in this case where all of the parties agreed that DeBerry killed the victim in the

heat of passion with adequate provocation. The Fifth Amendment prohibits now requiring

DeBerry to say otherwise.

### (3) The record fails to legally support the conclusion that DeBerry exhibited a callous attitude and lack of remorse.

Even if deemed a proper consideration, the record fails to legally support the Court of

Appeals' conclusion that DeBerry exhibited a callous attitude and lack of remorse. The court

relied upon DeBerry's statements to police during his interrogation, and his actions and inactions

following the shooting to support its conclusion. First, this conclusion flies in the face of

DeBerry's right to not incriminate himself. To conclude that DeBerry's failure to admit his

actions to the police when questioned about the case or to the evaluating psychologists assumes

that he is required to waive his right to remain silent both during the pre-arrest investigation of

the case and after his guilty plea. (Exhibit A at 16.) Secondly, DeBerry's statements about his

feelings about the victim reflected the agreed upon facts in this case, that the victim's threatening

actions provoked DeBerry's response. It is illogical to expect that nearly immediately after such

an ordeal that the suspect would feel any way other than anger. Thirdly, the court's conclusion

that he exhibited a lack of remorse because "he did not express remorse" and "did not

acknowledge" his actions is inconsistent with the facts of the case and the Fifth Amendment.

Merely because a person does not acknowledge his responsibility does not mean he is callous or

somehow more culpable. The Court of Appeals' conclusion is not supported by the record.

**B. THE COURT OF APPEALS ERRED BY HOLDING THAT THE TRIAL COURT PROPERLY CONSIDERED KYLE DEBERRY'S HISTORY OF METHAMPHETAMINE USE AS AN AGGRAVATING CIRCUMSTANCE. DEBERRY'S DRUG USE AT THE TIME OF THE OFFENSE AND DRUG ADDICTION ARE NOT AGGRAVATING UNDER A.R.S § 13-702(C)(19) AND SHOULD HAVE BEEN CONSIDERED AS A MITIGATING FACTOR. THE SENTENCING COURT AND THE COURT OF APPEALS VIOLATED DEBERRY'S DUE PROCESS RIGHT TO HAVE THE STATE FOLLOW ITS OWN REQUIREMENTS/LAW IN DEPRIVING A CITIZEN OF HIS LIBERTY. FOURTEETH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE II § 2 OF THE ARIZONA CONSTITUTION.**

The Court of Appeals erroneously concluded that the law and record supported Judge

VanWyck's decision to use DeBerry's drug use in aggravation because there was actually a

causal link between DeBerry's long term drug problem, drug use around the time of the

homicide and the homicide itself. This makes his drug use and history not aggravation, but

mitigation under A.R.S. §13-702(D)(2). (R.T. 6/15/00 at 130.) *See, State v. Hoskins,* 199 Ariz.

127, ¶113, 14 P.3d 997 (2000)(discussing causal connection requirement); *State v. Rossi*, 154

Ariz. 245, 251, 741 P.2d 1223, 1229 (1987)(significant impairment by drugs is mitigation);

*State v. Suniga,* 145 Ariz. 389, 395, 701 P.2d 1197, 1203 (App. 1985)(intoxication during the

commission of a crime may be a mitigating circumstance). The failure of the state to follow its

own law, requirements is a violation of a defendants due process rights. *Peace v. Hall WL 2002 31689360 (N.D. Cal. November 26, 2002).*

Uncontested evidence was introduced that established that DeBerry has been addicted to methamphetamine since he was 16 years old, that he was on the drug at the time the police interviewed him, and that he was under the influence of methamphetamine on the day of the shooting. (R.T. 6/13/00 at 98-99, 124.) At sentencing Dr. Packard testified as DeBerry's treating mental health professional without dispute that: (1) DeBerry suffered from ADHD; (2) a characteristic of ADHD is impulsivity; (3) that DeBerry, because of his ADHD, was susceptible to self-medicating with speed; and (4) that people afflicted with ADHD do not perceive the consequences of their behavior as well as non-afflicted people. (R.T. 6/14/00 at 145-151, 159.)

The sentencing court concluded that but for DeBerry's drug abuse he would not have shot Lattery. The court stated: "Mr. DeBerry did [well] when he was in school - - but you  remove some of those external controls and ...introduce drugs on top of that...terrible things are going to happen and did ... Mr. DeBerry, *if you had been clean and sober we wouldn't be here.*" (emphasis added) (R.T. 6/15/00 at 130-31.) Clearly, the record demonstrated that the sentencing court was convinced that DeBerry's ability to conform his conduct to the requirements of the law was impaired by drugs. If he had "been clean and sober" his ability to conform his conduct would not have been impaired.   The sentencing judge concluded the crime would not have occurred [*"we wouldn't be here"*] had DeBerry been *"clean and sober,"* i.e., not under the influence of methamphetamine.

The post conviction court's ruling vacating the sentence has an objective rationale basis. The only rational relationship the evidence of methamphetamine abuse has to the crime is to mitigate the punishment. Since this evidence has no tendency to "increase the crime's guilt or

enormity or add[ ] to its injurious consequences" it was improperly used as aggravation. *Cf. Elliget,* 177 Ariz. at 36. To the contrary, the evidence demonstrated that DeBerry's ability to conform was impaired for two reasons: drug abuse and ADHD. No evidence was presented which proved that DeBerry's involvement in the drug culture caused or aggravated this crime. The undisputed evidence was that DeBerry had an undiagnosed neurological impairment that made him vulnerable to drug abuse and that he was under the influence of methamphetamine at the time of the offense. The undisputed evidence was that DeBerry's ADHD and drug use resulted in impulsivity, impaired ability to perceive consequences and caused impaired judgment. There was a rationale basis for the post-conviction court's ruling finding that methamphetamine use was an improper aggravating factor. The Court of Appeals erred in concluding otherwise.

The Court of Appeals' relied upon *State v. Thurlow,* 148 Ariz. 16, 712 P.2d 929 (1986) and *State v. De la Garza,* 138 Ariz. 408, 675 P.2d 295 (App. 1983) to support its decision. (Exhibit A at 19-20) However, neither of those decisions authorizes a sentencing court to utilize a past history of drug addiction as an aggravating factor. Instead, those decisions discussed the court's decision to reject such evidence as *mitigation.* In *Thurlow,* this court remanded the case for resentencing because the record reflected that the trial judge had not considered whether the defendant's lack of prior criminal record was *mitigating* when he sentenced him to the presumptive term. 148 Ariz. at 20. Similarly, in *De la Garza,* the defendant argued that his long term drug addiction was *mitigating.* In upholding the trial court's rejection of this as *mitigation,* the court recognized the defendant's previous prison terms and failed rehabilitation efforts. 138 Ariz. at 409. The appellate court never discussed or utilized this evidence as aggravation or to justify a lengthy prison term. In this case, DeBerry had no prior criminal history and no failed

rehabilitative efforts. There was simply no evidence to support utilizing his addiction as aggravation. The Court of Appeals erred.

## C. THE TRIAL COURT ABUSED ITS DISCRTION BY REFUSING TO CONSIDER THE PROFFERED MITIGATION.

The record demonstrates that the sentencing court should have found Petitioner's ADHD and drug abuse as mitigating factors. Contrary to the Court of Appeals conclusion, the record does not reflect that Judge VanWyck ever considered this undisputed evidence as proffered; as mitigation. (Exhibit A at 20.) In announcing its sentence the court never stated that it considered this proffered mitigation. (R.T. 6/15/00 at 123-35.) This court held in *State v. Harrison,* 195 Ariz. 1, 985 P.2d 486 (1999)) that a trial court is required by A.R.S. § 13-702 to tell the defendant, victim, public and appellate court what it considered as aggravation and mitigation when imposing other than a presumptive sentence. A.R.S. § 13-702(D)(2) requires that the court consider as mitigating whether the defendant's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law was significantly impaired at the time of the offense. The record establishes that the trial judge did not consider the following proffered mitigation: 1) that DeBerry suffered from ADHD at the time of the offense, *See, State v. Murray,* 184 Ariz. 9, 45, 906 P.2d 542 (1995)(defendant's evidence of hyperactivity entitled to weight as nonstatutory mitigation); 2) that DeBerry's chronic history of methamphetamine abuse impaired his capabilities at the time of the offense, *See, State v Gretzler,* 135 Ariz. 42, 57-58, 659 P.2d 1, 16 (1983)(defendant's long term drug abuse given weight in mitigation); and most importantly, 3) that DeBerry was impaired at the time of the offense. *State v Ramirez,* 178 Ariz. 116, 131, 871 P.2d 237, 252 (1994)(uncontested evidence of impairment at time of the offense by alcohol and cocaine abuse entitled to weight as mitigation). This case should be remanded with directions to consider the proffered mitigation in sentencing.

## IV.    CONCLUSION

Based upon the foregoing it is respectfully requested that this Court grant review of the issue addressed herein and reverse the Court of Appeals, vacate DeBerry's sentence and order that the trial court resentence DeBerry.

/   /   /

/   /   /

/   /   /

RESPECTFULLY SUBMITTED this 23rd day of January, 2003.

Thomas Gorman, Esq.
Attorney for Respondent

Original and 6 Copies of the forgoing
mailed on the date submitted to:

ARIZONA COURT OF APPEALS-CLERK'S OFFICE
1501 West Washington, Room 203
Phoenix, AZ 85007-3329

One Copy delivered to:

SUSAN STERMAN, ESQ.
COCONINO COUNTY ATTORNEY'S OFFICE
110 East Cherry Street
Flagstaff, AZ 86001

HONORABLE DANA HENDRIX
COCONINO COUNTY SUPERIOR COURT, DIV. 1
200 North San Francisco Street
Flagstaff, AZ 86001

HONORABLE ROBERT VAN WYCK
COCONINO COUNTY SUPERIOR COURT, DIV. 1
200 North San Francisco Street
Flagstaff, AZ 86001

By: