**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

KYLE DEBERRY,

        Petitioner,

v.

DORA B. SCHRIRO, et al.,

        Respondents.

No. CV-04-0858-PCT-SMM (JI)

**MEMORANDUM OF DECISION AND ORDER**

    Pending before the Court is Petitioner Kyle DeBerry ("Petitioner")'s Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 60). The matter was referred to Magistrate Judge Jay R. Irwin for a Report and Recommendation. His 75 page decision was filed on September 28, 2007 (Doc. 62). On November 16, 2007, Petitioner filed his Objection to the Report and Recommendation (Doc. 67). Respondents Dora Schriro and Terry Goddard ("Respondents") filed their Objection (Doc.66) that same day and Petitioner replied on December 3, 2007 (Doc. 68). The Court has considered the Report and Recommendation and Petitioner and Respondents' Objections thereto, as well as engaged in a thorough review of the complex, extensive and voluminous record and protracted procedural history. The Court now issues the following ruling adopting in part and rejecting in part the magistrate judge's recommendations, and denying Petitioner's claim for relief.

**FACTUAL AND PROCEDURAL BACKGROUND** [1]

*A.    Proceedings at Trial*

On October 14, 1999, an indictment was issued against Petitioner, charging him with the first degree murder of Lamont Lattery (Doc. 9, Exhibit A).[2]  Then, on May 12, 2000, Petitioner pled guilty to one count of manslaughter, in violation of Ariz. Rev. Stat. ("A.R.S.") § 13-1103(A)(2),[3] pursuant to a Plea Agreement (Exhibit F).  The manslaughter conviction carried a minimum sentence of 7 years, a presumptive sentence of 10.5 years, and a maximum sentence of 21 years.  A.R.S. § 13-704(A); (Id. at 1).  However, there was no stipulation as to the sentence to be imposed, as the parties left sentencing to the discretion of the court (Id.).

After a three-day aggravation/mitigation hearing, the trial court sentenced Petitioner to a term of 16 years in prison (Exhibit M, R.T. 6/15/00 at 135).  This sentence was above the presumptive sentence of 10.5 years, but below the statutory maximum of 21 years (Id.).  In reaching its sentence, the trial court found three aggravating factors, including the financial and emotional injury suffered by the victim's family; the lack of remorse shown by Petitioner; and Petitioner's drug use (Id. at 132-33).  Conversely, the lack of any previous convictions and a supportive family were found to be mitigating factors (Id. at 133-34).

*B.    Proceedings on Direct Appeal*

Under Arizona law, Petitioner was not entitled to a direct appeal since he had entered a guilty plea.  A.R.S. § 13-4033(B).  Consequently, no direct appeal was filed.

---

[1]A more detailed account of the factual and procedural background of the case can be found in Judge Irwin's Report and Recommendation (Doc.62).

[2]Exhibits to the Answer, Doc. 9, are referenced thereafter as "Exhibit ___."

[3]A.R.S. § 13-1103(A)(2) provides: "A person commits manslaughter by . . . committing second degree murder as defined in § 13-1104, subsection A upon a sudden quarrel or heat of passion resulting from adequate provocation from the victim." "'Adequate provocation' means conduct or circumstances sufficient to deprive a reasonable person of self-control."  A.R.S. § 13-1101(4).

1    *C.    Post-Conviction Relief Proceedings*

2        Subsequently, Petitioner filed a Petition for Post-Conviction Relief and argued two

3    grounds for seeking such relief: 1) the prosecution breached the plea agreement by arguing

4    the lack of adequate provocation, and thus, violated Petitioner's due process rights (Exhibit

5    N, PCR Petition at 2, 27-29); 2) the court impermissibly aggravated Petitioner's sentence

6    based upon Petitioner's attention deficit hyperactivity disorder (ADHD), drug use, and lack

7    of remorse as well as failed to consider any mitigating circumstances, resulting in further due

8    process violations (Id. at 2, 29-37).  In its ruling, the post-conviction court[4] first found that

9    there was no breach of the plea agreement because the prosecution had simply argued the

10   degree of provocation at sentencing, rather than its existence (Exhibit P, M.E. 11/7/01 at 1).

11   However, the court found that the record failed to support a finding of lack of remorse or

12   methamphetamine use as aggravating factors (Id. at 1-2).  The court declined to discuss the

13   failure to consider mitigating evidence finding "it is unnecessary to determine whether the

14   trial judge failed to consider the mitigating factors presented by the defense as those factors

15   may be presented at the sentencing hearing." (Id. at 2)  As a result of the court's ruling, the

16   sentence was vacated and the matter set for re-sentencing (Id.).

17       Before re-sentencing, the state petitioned the Arizona Court of Appeals for review and

18   challenged the post-conviction court's finding that the two aggravating factors used by the

19   sentencing court were improper (Exhibit Q, State's Petition for Review at 1).   In his

20   Response, Petitioner asserted that the state was improperly arguing the correctness of the

21   sentencing court's original decision, instead of the post-conviction court's determination that

22   the record did not  support those decisions (Exhibit R, Response at 2-4).  Petitioner also

23   argued that considering lack of remorse as an aggravating factor violated his Fifth

24

25           [4] The sentence was pronounced by Hon. Robert B. Van Wyck (Exhibit M, R.T.
26   6/15/00).  The post-conviction relief petition was decided by Hon. Danna D. Hendrix
     (Exhibit P, M.E. 11/7/01).
27

28                                              - 3 -

Amendment right to remain silent at his sentencing (Id. at 4-10). Additionally, Petitioner filed a Cross-Petition for Review in which he argued that the court had erred in finding that the state had not breached the plea agreement (Exhibit S, Cross-Petition at 12-14). In its Memorandum Decision on December 26, 2002, the Arizona Court of Appeals upheld the post-conviction court's finding that there was no breach of the plea agreement, but reversed as to its decision regarding lack of remorse and drug use (Doc. 57, Traverse, Exhibit K).[5] Consequently, the grant of the Petition for Post-Conviction Relief was vacated, and the original sentence was reinstated (Id.).

Next, Petitioner filed a Petition for Review in the Arizona Supreme Court (Exhibit V). In this Petition, Petitioner made three arguments: 1) the lack of remorse was not a proper aggravating factor pursuant to the Fifth Amendment (Id. at 4-9); 2) consideration of Petitioner's drug use as an aggravating factor violated Petitioner's Fourteenth Amendment due process rights (Id. at 9-12); and 3) the trial court abused its discretion by failing to consider mitigating factors such as his drug use and ADHD (Id. at 12). On May 30, 2003, the Petition for Review was denied summarily by the Arizona Supreme Court (Exhibit X, 5/30/03 Order).

D.    *Second Post-Conviction Relief Proceeding*

On November 4, 2004, while his federal habeas proceeding was pending, Petitioner filed a second Petition for Post-Conviction Relief (Doc. 54, Supplemental Exhibit 1).[6] In this Petition, Petitioner alleged that under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004), his right to a jury trial was violated when his sentence was aggravated based upon factors not decided by a jury or admitted by Petitioner. Additionally, Petitioner argued ineffective assistance of counsel based upon trial counsel's

---

[5] The copy of the Court of Appeals Memorandum Decision attached to the Answer (Doc. 9, Exhibit U) appears to be incomplete and missing pages.

[6] Exhibits to the Supplemental Answer, Doc. 54, are referenced thereafter as "Supplemental Exhibit ___."

failure to raise a claim under <u>Blakely</u> in the original post-conviction relief proceedings. Similar state law claims were also raised by Petitioner. On May 10, 2005, the trial court found that <u>Blakely</u> was not applicable retroactively and Petitioner's first Post-Conviction Relief Petition was final upon denial of review by the Arizona Supreme Court (Supplemental Exhibit 2, M.E. 5/10/05 at 3). In addition, the trial court denied the ineffective assistance of trial counsel claim since <u>Blakely</u> was not decided until after Petitioner's sentencing (<u>Id.</u> at 3-4). Regardless, any such failure did not affect the case's outcome (<u>Id.</u>).

Petitioner filed another Petition for Review with the Arizona Court of Appeals. (Supplemental Exhibit 3) In it, Petitioner argued <u>Blakely</u> applied retroactively since it simply clarified <u>Apprendi</u>, a decision entered while Petitioner's first Post-Conviction Relief Petition was pending (<u>Id.</u> at 4-9). Consequently, Petitioner claimed that <u>Blakely</u> applied to his case, and his post-conviction relief counsel was ineffective in neglecting to assert the claim (<u>Id.</u> at 9-10). The state responded that <u>Blakely</u> did not apply retroactively to cases on collateral review, and that Petitioner's conviction became final on entry of sentence on June 15, 2000 (Supplemental Exhibit 4 at 3-5). Also, ineffective assistance of counsel could not be shown since Petitioner's conviction became final before the <u>Blakely</u> decision was announced (<u>Id.</u> at 5-6). Review was summarily denied on April 27, 2006 (Supplemental Exhibit 5, 4/27/06 Order). Then, on May 26, 2006, Petitioner filed a Petition for Review by the Arizona Supreme Court that sought review of the same issues raised to the appellate court (Supplemental Exhibit 6). On October 12, 2006, the Arizona Supreme Court also summarily denied review (Supplemental Exhibit 7, 10/12/06 Order).

E.    *Current Federal Habeas Proceedings*

1.    Current Petition

On April 26, 2004, Petitioner filed a Petition for Habeas Corpus (Doc. 1), and Respondents subsequently filed an Answer (Doc. 9). On November 3, 2004, Petitioner filed a Motion to Amend and to Stay (Doc. 15) requesting that the case be stayed while he

exhausted his state remedies on his Apprendi/Blakely claims. The Court granted that motion (Doc. 16), and a First Amended Petition was later filed (Doc. 21).

Petitioner proceeded with his state remedies and filed status reports monthly from November 2004 until October 2006 when the Petition for Review to the Arizona Supreme Court was denied (Docs. 18-19, 23-31, 33-46). The stay was lifted by the Court (Doc. 47) and a briefing schedule set (Doc. 50). Then, on February 16, 2007, Petitioner filed a Third Motion to Amend (Doc. 52) and lodged a Second Amended Petition (Doc. 53). The Court granted the Motion to Amend on May 4, 2007 (Doc. 59) and Petitioner's Second Amended Petition was filed on May 8, 2007 (Doc. 60). In this petition, Petitioner asserted three grounds for relief.

Ground 1(a) of the Second Amended Petition alleged that the sentencing court's failure to consider mitigating evidence of Petitioner's ADHD and drug use was a violation of his Fourteenth Amendment due process rights (Id. at 5). Ground 1(b) asserted that Petitioner's right to silence was violated when the sentencing court viewed his post-charge silence as indicative of a lack of remorse and as a result, aggravated his sentence (Id.). Ground 1(c) claimed that Petitioner's state law and due process rights were denied when the sentencing court considered his drug use as an aggravating factor, rather than as a mitigating factor (Id.).

Ground 2 asserted that the prosecution breached its plea agreement with Petitioner, and thus, violated Petitioner's due process rights. Despite entering an agreement requiring Petitioner to plead guilty to manslaughter on the basis of adequate provocation, the prosecution allegedly argued at sentencing a lack of provocation (Id. at 6). In addition, Petitioner asserted that the prosecution referenced second degree murder at sentencing, another violation of its plea agreement with Petitioner (Id.).

Ground 3(a) claimed that Petitioner's right to a jury trial was violated when the sentencing court aggravated his sentence based on aggravating factors not found by a jury or admitted by Petitioner, including inadequate remorse and drug use (Id. at 7-7a). Petitioner

claimed that two U.S. Supreme Court cases, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), provided him with the claimed right to a jury, and that the Arizona courts failed to apply these cases to him in his first post-conviction relief petition (<u>Id.</u>). Finally, Ground 3(b) alleged ineffective assistance of counsel in Petitioner's first Rule 32 proceeding, based upon counsel's failure to object to the court's aggravating circumstances fact-finding (<u>Id.</u>).

2. Answer

On August 12, 2004, Respondents filed their Answer (Doc. 9) to the original Petition (Doc. 1). As to Grounds 1(a), Respondents argued that Petitioner failed to exhaust his state court remedies, and the claim was now procedurally defaulted (Doc. 9, 22-23). Additionally, the claim was a state law claim not appropriate for habeas review and was meritless (<u>Id.</u> at 25-26). As to Ground 1(b), Respondents claimed that it was procedurally defaulted (<u>Id.</u> at 27-31) as well as meritless (<u>Id.</u> at 44-53). Similar to Ground 1(a), Respondents contended that Petitioner failed to exhaust his state court remedies with regards to Ground 1(c) and that the claim was procedurally defaulted (<u>Id.</u> at 22-23). Furthermore, Ground 1(c) was a state law claim not cognizable on habeas review (<u>Id.</u> at 23-24). As to Ground 2, breach of the plea agreement, Respondents argued that the finding by the state court that no agreement existed as to the degree of provocation was supported by the record, and that the state court properly applied federal law (<u>Id.</u> at 34-43).

3. Supplemental Answer

On March 16, 2007, Respondents filed a Supplemental Answer addressing the new claims presented in Petitioner's Ground Three (Doc. 54). Although properly exhausted, Respondents contended that the new claims were without merit for several reasons. First, <u>Blakey</u> was not applicable retroactively to Petitioner because the case introduced a new rule of procedural law, and Petitioner's conviction was final upon his sentencing due to his waiver of his direct appeal rights (<u>Id.</u> at 10-17). Second, while <u>Apprendi</u> was applicable to Petitioner, that case did not compel the result sought by Petitioner. Third, <u>Blakely</u> was not

applicable because Petitioner admitted one of the aggravating factors and that was all that was needed to justify an aggravated sentence (Id. at 34-39). Fourth, any error was harmless because overwhelming evidence established at least one aggravating factor (Id. at 39-45). Fifth, Petitioner had no right to counsel in his post-conviction relief proceeding (Id. at 45-48). Finally, counsel was not ineffective for failing to predict the Supreme Court's holding in Blakely (Id. at 48-51).

4. Traverse

On April 12, 2007, Petitioner filed a Traverse (Doc. 57) in which he argued that all of his claims were properly exhausted and meritorious.

### STANDARD OF REVIEW

When reviewing a magistrate judge's Report and Recommendation, this Court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

### PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion of available state judicial remedies is a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings. 28 U.S.C. § 2254(b); see McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). As a matter of federal-state comity, federal courts generally do not consider a claim in a habeas corpus proceeding until the state courts have had an opportunity to act upon the claim. Rose v. Lundy, 455 U.S. 509, 515(1982).

To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate

- 8 -

manner. <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982); <u>Picard v. Connor</u>, 404 U.S. 270, 276-77 (1971). If a habeas claim includes new factual allegations not presented to the state court, it may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. <u>Vasquez v. Hillery</u>, 474 U.S. 254, 260 (1986).

Exhaustion requires that a petitioner clearly alert the state court that he is alleging a specific federal constitutional violation. <u>See</u> <u>Casey v. Moore</u>, 386 F.3d 896, 913 (9th Cir. 2004); <u>see also</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 163 (1996) (general appeal to due process not sufficient to present substance of federal claim); <u>Lyons v. Crawford</u>, 232 F.3d 666, 669-70 (2000), <u>as amended by</u> 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury, and ineffective assistance of counsel lacked specificity and explicitness required); <u>Hiivala v. Wood</u>, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). A petitioner must make the federal basis of a claim explicit either by citing specific provisions of the federal constitution or statutes or federal case law, <u>Lyons</u>, 232 F.3d at 670, or by citing state cases that plainly analyze the federal constitutional claim, <u>Peterson v. Lampert</u>, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

"Generally . . . a prisoner need exhaust only one avenue of relief in state court before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court." <u>Turner v. Compoy</u>, 827 F.2d 526, 528 (9th Cir. 1987). In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs post-conviction relief proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior post-conviction relief petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner

can justify why the claim was omitted from a prior petition or not presented in a timely manner. See Ariz. R. Crim. P. 32.1(d)-(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). The procedural bar relied on by the state court must be independent of federal law and adequate to warrant preclusion of federal review. See Harris v. Reed, 489 U.S. 255, 262 (1989). A state procedural default is not independent if, for example, it depends upon a federal constitutional ruling. See Stewart v. Smith, 536 U.S. 856, 860 (2002) (per curiam). A state bar is not adequate unless it was firmly established and regularly followed at the time of the purported default. See Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman, 501 U.S. at 735 n.1; see also Ortiz v. Stewart, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. Coleman, 501 U.S. at 732, 735 n.1; see also Gray, 518 U.S. at 161-62.

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. Reed v. Ross, 468 U.S. 1, 9 (1984). As a general matter, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. Coleman, 501 U.S. at 750. Cause may be

- 10 -

demonstrated by showing that "some objective factor external to the defense" prevented the petitioner from complying with state procedural rules relating to the presentation of his or her claims.  See e.g., McCleskey v. Zant, 499 U.S. 467, 493-94 (1991).

## AEDPA STANDARD FOR RELIEF

Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The AEDPA established a substantially higher threshold for habeas relief with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'"  Schriro v. Landrigan, 550 U.S. 465, 473-75 (2007) (quoting Woodford v. Garceau, 538 U.S. 202, 206 (2003)).  The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt."  Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (quoting Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other nonsubstantive ground.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  The relevant state court decision is the last reasoned state decision regarding a claim.  Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)); Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." Williams v. Taylor, 529 U.S. 362, 390 (2000).  Therefore, to assess a claim under subsection

(d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. See Carey v. Musladin, 549 U.S. 70, 74 (2006); Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. Williams, 529 U.S. at 381; see Musladin, 549 U.S. at 76-77; Casey v. Moore, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. Clark, 331 F.3d at 1069; see also Casey, 386 F.3d at 907.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. Williams, 529 U.S. at 405-06; see Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406; see Lambert, 393 F.3d at 974.

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

where it should apply." <u>Williams</u>, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." <u>Id.</u> at 409; <u>Landrigan</u>, 550 U.S. at 473; <u>Visciotti</u>, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005) (Miller-El II). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) (Miller-El I); <u>see</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Landrigan</u>, 550 U.S. at 473-74; <u>Miller-El II</u>, 545 U.S. at 240. However, it is only the state court's factual findings, not its ultimate decision, that are subject to 2254(e)(1)'s presumption of correctness. <u>Miller-El I</u>, 537 U.S. at 341 ("The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions.").

As the Ninth Circuit has noted, application of the foregoing standards presents difficulties when the state court decided the merits of a claim without providing its rationale. <u>See</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003); <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002); <u>Delgado v. Lewis</u>, 223 F.3d 976, 981-82 (9th Cir. 2000). In those circumstances, a federal court independently reviews the record to assess whether the state court decision was objectively unreasonable under controlling federal law. <u>Himes</u>, 336 F.3d at 853; <u>Pirtle</u>, 313 F.3d at 1167. Although the record is reviewed independently, a federal court nevertheless defers to the state court's ultimate decision. <u>Pirtle</u>, 313 F.3d at 1167; <u>see also</u> <u>Himes</u>, 336 F.3d at 853. Only when a state court did not decide the merits of a properly

raised claim will the claim be reviewed de novo, because in that circumstance "there is no state court decision on [the] issue to which to accord deference." Pirtle, 313 F.3d at 1167; see also Menendez v. Terhune, 422 F.3d 1012, 1025-26 (9th Cir. 2005); Nulph v. Cook, 333 F.3d 1052, 1057 (9th Cir. 2003).

**DISCUSSION**

In his Report and Recommendation, the magistrate judge recommended the following for the grounds raised in Petitioner's Second Amended Petition: 1) Grounds 1(a) and 1(c) be dismissed with prejudice; 2) Grounds 1(b), 3(a) and 3(b) be denied; and 3) Ground 2 be granted (Doc. 62). Moreover, the magistrate judge recommended that Petitioner be released unless Petitioner was either re-sentenced before a new judge or permitted to withdraw his guilty plea (Id.).

Petitioner objects to the magistrate judge's recommendations as to Grounds 1(a), 1(b), 1(c), 3(a) and 3(b) (Doc. 67). Additionally, Respondents object to the magistrate judge's recommendation as to Ground 2 (Doc. 66).

Each of the magistrate judge's recommendations, and the parties' objections to them, will be examined in turn.

**I.       Ground 1(a): Failure to Consider Mitigation**

*A.       Exhaustion of State Court Remedies*

In his Report and Recommendation, the magistrate judge recommended that Ground 1(a) be dismissed because Petitioner had failed to exhaust his state court remedies (Doc. 62, pp.15-18) and the claim was procedurally defaulted (Id. at 18-21). While Petitioner had properly presented his due process claim on drug use to the trial court, he had not presented it to the Arizona Court of Appeals (Id. at 15). Although Petitioner later made the argument in his petition to the Arizona Supreme Court, this was not sufficient to exhaust Petitioner's state court remedies because of the discretionary nature of the highest court's review (Id. at 15-17). Similarly, the magistrate judge found that Petitioner did not present his due process claim on his ADHD to the Arizona Court of Appeals (Id. at 17). The magistrate judge found

it was a closer question whether this claim was presented to the Arizona Supreme Court, and

ultimately found it was not presented to that court either (Id. at 17-18).

Petitioner argues this recommendation is incorrect because the Rule 32 post-conviction relief court ruled in Petitioner's favor and ordered a new sentencing hearing where mitigation evidence would be considered (Doc. 67, p.20). According to Petitioner, a party who wins on a claim at the trial court level is not required to replead it on appeal for purposes of exhaustion (Id.). Rather, it is the losing party that must appeal in order to preserve the claim (Id.).

Respondents do not disagree with the magistrate judge's finding that Petitioner failed to exhaust his state remedies (Doc. 66, p.2 n.1). However, Respondents contend that Petitioner failed to present his failure to mitigate claim even to the post-conviction relief court (Id.). According to Respondents, Petitioner's citation to the "5th, 6th and 14th Amendments" on the second page of his Petition for Post-Conviction Relief failed to present a federal due process claim to the trial court (Id.).[7]

---

[7] Respondents point to two recent Ninth Circuit cases to support their argument that this claim was unexhausted even at the trial court level, contrary to the magistrate judge's finding. In Castillo v. McFadden, the Ninth Circuit found that the petitioner had failed to exhaust his federal claims because his briefing was devoid of any language presenting his federal due process claim to the Arizona Court of Appeals. 399 F.3d 993, 1000 (9th Cir. 2005). Instead, the petitioner had focused his argument on whether a videotape of his interrogation and arrest was prejudicial under Arizona Rule of Evidence 403. Id. There was no mention of the United States Constitution until the end of the petitioner's argument, where the petitioner summarily claimed that "[b]ecause this improper evidence was admitted, Appellant was denied a fair trial in violation of the United States and Arizona Constitutions." Id. at 1000-01. The Ninth Circuit held that a general appeal to a "fair trial" right was insufficient to exhaust the petitioner's claim because it did not reference any specific constitutional provision on which his claim rested, nor any relevant state or federal cases. Id. at 1001. Similarly, in Fields v. Waddington, also cited by Respondents, the petitioner's citations to the Constitution as a whole without specifying any specific provision was found insufficient to exhaust his federal claims. 401 F.3d 1018, 1021 (9th Cir. 2005).

### 1. Post-Conviction Review Court

Petitioner's post-conviction relief petition contained the following caption on the second page:

Claim 2:

> a. The Sentencing Court Failed To Consider The Substantial Mitigation Presented By Petitioner.
> b. The Sentencing Court Found Two Aggravating Factors That Are Not Recognized Under The State Or Federal Constitution. All in violation of his rights under the 5th, 6th, and 14th Amendments to the United States Constitution. Rule 32.1(a) Arizona Rules of Criminal Procedure.

(Exhibit N, PCR Petition at 2). While the magistrate judge found this citation to the Fifth, Sixth, and Fourteenth Amendments sufficient to exhaust Petitioner's mitigation claim, the Court declines to adopt this portion of the magistrate judge's report and finds the claim unexhausted at the trial court level.

Petitioner begins his Petition for Post-Conviction Relief by generally referencing the Fifth, Sixth, and Fourteenth Amendments and asserting that his conviction and sentence violate these constitutional provisions, as well as Article 2, section 24 of the Arizona Constitution (Exhibit N, PCR Petition at 1). The petition states, "Kyle DeBerry . . . states that his conviction and sentence are in violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article II Sec. 24 of the Arizona Constitution." (Id.) This conclusory statement is insufficient for exhaustion purposes. See Solis v. Garcia, 219 F.3d 922, 930 (9th Cir. 2000) (holding that habeas petitioner failed to exhaust a federal claim by stating, "Finally, the errors complained of above, individually and cumulatively denied appellant Due Process and a fair trial under federal and state constitutions.").

Next, on the Petition's second page, Petitioner mentions the Fifth, Sixth, and Fourteen Amendments in a caption challenging the trial court's finding of two aggravating circumstances, presumably Petitioner's lack of remorse and methamphetamine use, as well as the court's failure to consider certain mitigating evidence. See supra at p.16. Petitioner's "scattershot" citation of federal constitutional provisions leaves it unclear how the Fifth,

Sixth, and Fourteenth amendments relate to his various claims. <u>Castillo</u>, 399 F.3d at 1002. Possibly, the Fifth Amendment may relate to Petitioner's claim that the sentencing court improperly aggravated his sentence based upon lack of remorse, and thus, violated his privilege against self-incrimination. Possibly, the Fourteenth Amendment may relate to his claims that the sentencing court failed to consider certain mitigating evidence and improperly aggravated his sentence. The Court, however, should not have to speculate or conjecture on Petitioner's unstated legal theories.

In <u>Castillo</u>, the Ninth Circuit found that referring to a constitutional amendment in relation to one claim does not exhaust a separate assertion that the trial court violated a petitioner's constitutional rights under the same amendment in another claim. <u>Id.</u> at 1002-03. "Referring to the Fourteenth Amendment in relation to these other claims [impartial jury and Batson] does not exhaust his separate assertion that the trial court violated his federal due process rights by admitting the videotape. Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." <u>Id.</u> Consequently, Petitioner failed to exhaust Ground 1(a) regarding mitigation evidence.

Furthermore, Petitioner fails to present any further argument regarding mitigation and due process in the argument section of his post-conviction relief petition. Instead, Petitioner references only state law requiring a sentencing judge to consider certain mitigating factors, including whether Petitioner's capacity to conform his conduct to the requirements of the law was impaired (Exhibit N, PCR Petition at 34-37). Petitioner fails to explain how these constitutional provisions apply to his claim, and this is insufficient for exhaustion purposes. "Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." <u>Castillo</u>, 399 F.3d at 1003; <u>see also</u> <u>Gray</u>, 518 U.S. at 162-63 (state prisoner "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.").

In his Objection to the magistrate judge's report, Petitioner now argues that he was deprived of a protected liberty interest without due process of law (Doc. 67, p.24). Petitioner asserts that "a state law imposing clear mandates may create a 'liberty interest' in the expectation that those mandates will be followed, the arbitrary deprivation of which by the State violates the defendant's federal due process rights." (Id.) However, this argument was never articulated in the Post-Conviction Relief Petition filed by Petitioner and cannot serve to excuse the lack of exhaustion in state court.

       *B.*    *Procedural Default*

The magistrate judge next concluded that Petitioner had procedurally defaulted on this claim (Doc. 62, p.21). As an alternative to presenting his claims to the highest state court, a petitioner can fulfill the exhaustion requirement by showing that no state remedies were available at the time he filed his federal habeas petition (Id. at 18-19). The magistrate judge determined that Petitioner had "waived" his claim by failing to preserve it in the Arizona courts (Id. at 19). Despite a procedural default on a claim, the default may be excused, and a habeas petitioner may obtain federal review of his claim, by showing sufficient "cause and prejudice." (Id. at 21) In his Report and Recommendation, the magistrate judge found that Petitioner had not made the required showing to excuse the default, and thus, the claim must be dismissed with prejudice (Id.). The Court adopts this portion of the magistrate judge's report and finds Ground 1(a) procedurally defaulted.

In his Objection, Petitioner claims that the magistrate judge's procedural default recommendation is flawed for two reasons, both of which are meritless. First, Petitioner argues that a federal district court can only find a procedural default where "[t]he highest state court to rule on the claim clearly and unambiguously relied on the procedural violation as to its reason for rejecting the claim." (Doc. 67, p.21) In this case, the Arizona Supreme Court summarily denied review without giving any reasoning, and thus, the relevant state court was the Arizona Court of Appeals because it issued the last "explained ruling." (Id.

- 18 -

at 22)  Since the Court of Appeals did not rely on the procedural default in rejecting Ground 1(a), therefore, there is no procedural default (Id.).

However, there are two ways by which a claim may be procedurally defaulted.  As referenced in Petitioner's Objection, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds.  Coleman, 501 U.S. at 729-30.  Additionally, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Id. at 735 n.1.  This second form of procedural default is applicable in the present case, and thus, Petitioner's objection is not well-founded.

The Court  finds that Petitioner had failed to present his mitigation claim to the post-conviction review court, but that a return to state court would be futile.  The Arizona Rules of Criminal Procedure preclude relief "based upon any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(3).  The Arizona Supreme Court has recognized that except for claims of "sufficient constitutional magnitude", the state may establish preclusion pursuant to Rule 32.2 by showing "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding."  Stewart v. Smith, 202 Ariz. 446, 449-50, 46 P.3d 1067, 1070-71 (2002) (en banc).  Petitioner does not claim that his due process claim would be of "sufficient constitutional magnitude" to require something more than a mere failure to raise the claim for preclusion to apply.  Therefore, the Court concludes that Petitioner's Ground 1(a) would be precluded under Rule 32.2(a)(3).

Moreover, the time for Petitioner to file a direct appeal has elapsed.  See Ariz. R. Crim. P. 31.3 (time for filing a direct appeal expires twenty days after entry of judgment and sentence).  Successive direct appeals are not permitted under the Arizona Rules of Criminal

Procedure, and thus, a direct appeal is no longer available for Petitioner's unexhausted claims. See generally Ariz. R. Crim P. 31. Similarly, Petitioner cannot file a successive post-conviction relief petition because the filing deadline has passed and the exceptions outlined in Arizona Rule of Criminal Procedure 32.1(d) through (h) are inapplicable. See Ariz. Crim. P. 32.4 (deadline for filing petitions for post-conviction relief); Ariz. R. Crim. P. 32.1(d)-(h).

Furthermore, Petitioner has failed to show "cause and prejudice" sufficient to excuse the default. See Coleman, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court . . ., federal habeas review of the claims is barred unless the prisoner can demonstrate *cause* for the default and *actual prejudice* as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.") (emphasis added). "In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). However, a petitioner asserting his actual innocence of the crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" set forth in his habeas petition. Schlup v. Delo, 513 U.S. 298, 327 (1995). Petitioner did not make such a showing before the magistrate judge, and does not attempt to do so now. Therefore, the magistrate judge correctly found Ground 1(a) procedurally defaulted.

Second, Petitioner argues that the state failed to raise procedural default before the Court, and as a result, waived the defense (Doc. 67, p.22). Instead, Petitioner alleges, the state's arguments centered on a failure to exhaust, a separate argument (Id.). Procedural default is an affirmative defense. Vang v. Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003). Generally, the state must assert procedural default as a defense to the habeas petition before

the district court or risk waiving the defense.  Id.; see also  Francis v. Rison, 894 F.2d 353, 355 (9th Cir. 1990) ("[I]n state prisoner's habeas petitions, we have held that a state waives procedural default by failing to raise it in federal court."); Batchelor v. Cupp, 693 F.2d 859, 864 (9th Cir. 1982) ("Sound policy reasons support the view that the states should bear the responsibility of asserting state procedural issues.  If a federal habeas petitioner has failed to comply with state procedures,  the state's representative is in the best position to identify the procedural default and argue in federal court that the state has an interest in barring federal review of the merits.").  In the present case, the state raised the procedural default defense in its Answer to Petitioner's habeas petition (Doc 9).  The state argued that Ground 1(a) was procedurally defaulted because Rule 32.2(a)(3) barred consideration of the claim on its merits and rendered a return to state court futile (Id. at pp.22-23).  By raising the procedural default defense in federal court, the state did not waive it.

Since both of Petitioner's objections are not warranted, the Court finds that Ground 1(a) is procedurally defaulted, and must be dismissed with prejudice.

### C.    Merits of Claim

In addition to the procedural default, Ground 1(a) fails on the merits.  In his Objection, Petitioner asserts that he was deprived of a protected liberty interest without due process of law when the trial judge at sentencing refused to consider mitigating factors as required by state statute (Doc. 67, p.24).  Petitioner relies on A.R.S. § 13-702(D)[8] which states that a sentencing court should consider mitigating circumstances including "the defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of the law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13-701(E)(2). Petitioner argues that extensive evidence was presented at the aggravation/mitigation hearing regarding his

---

[8]While Petitioner cites to A.R.S. § 13-702(D), the mitigation circumstances quoted to in his brief come from A.R.S. § 13-701(E).

capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law at the time of the shooting (Doc. 67, p.25). Two psychologists testified that Petitioner was suffering from untreated ADHD, which made him impulsive and unable to appreciate the wrongfulness of his actions (Id.). Petitioner also was under the influence of methamphetamines which he used to "self-medicate" his ADHD (Id.). Petitioner contends that case law shows that such evidence can be mitigating when it impairs a person's ability to recognize the wrongfulness of his conduct or to conform his conduct to the law (Id. at 25-26).

The Court finds Petitioner's argument unpersuasive. First, Petitioner's claim is not cognizable on habeas review. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994) (federal habeas relief generally "unavailable for alleged error in the interpretation or application of state law"). To the extent that Petitioner's is cognizable on habeas review, the federal constitution does not require individualized sentencing determinations outside capital cases. See Harmelin v. Michigan, 501 U.S. 957, 995 (1991) (plurality) (Supreme Court held that individualized sentences are only required in capital cases and refused to apply the capital punishment doctrine to non-capital cases because of the "qualitative difference between death and all other penalties"); United States v. LaFleur, 971 F.2d 200, 211 (9th Cir. 1991) (recognizing that there is no constitutionally mandated individualized sentencing doctrine outside the capital context); Schrivner v. Tansy, 68 F.3d 1234, 1240 (10th Cir. 1995) ("The prevailing practice of individualized sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative.") (citation omitted).

Second, the Court finds that the trial court judge did consider the mitigation evidence offered by Petitioner in determining his sentence. Prior to rendering a sentence, the judge received sentencing memoranda from both sides outlining proposed aggravating and

mitigating factors (Exhibits I, J) and conducted an extensive three-day aggravation/mitigation hearing where both sides presented witnesses (Exhibits K, L, M). Furthermore, before imposing the sentence on Day 3 of the aggravation/mitigation hearing, the judge explained on the record the guideline range for manslaughter and how a proper sentence is determined. The judge acknowledged that the state has argued aggravating factors, while the defense had argued mitigating factors.

> [I]n a sentencing for this kind of a case there is a range of sentence, and that range is from seven to 21 years. The presumptive sentence is 10.5 years. And presumptive sentence means that that is without reference to other factors, without anything else that may be aggravating or mitigating is the appropriate sentence.
>
> . . .
>
> There are guidelines to help this Court in determining whether the sentence should be above or below the 10.5 The 10.5 is essentially the needle. That's where the needle starts. And aggravating factors, we've talked about them, state has pointed out aggravating factors, and the defense has pointed out mitigating factors.

(Exhibit M, R.T. 6/15/00 at 125-26)

Next, the judge stated that the hearing allowed the court to appreciate the impact of Lattery's death on his family, the adverse effects of drug abuse, and Petitioner's ADHD condition (Id. at 123-24, 129-30). Regarding Petitioner's ADHD and drug use, he stated as follows:

> I want to again say briefly, the fact that — and we've had a fair amount of discussion about it, the ADHD, which I do know a fair amount about, the drugs, the allegations . . . have helped this court to understand the culture and where these people were living, how they were living, and how this kind of thing happened. . . The fact of ADHD, clearly he was ADHD, means only to me that perhaps when the prison term is served that you'll have a better chance of rehabilitation and that Mr. DeBerry will have a little bit more of an ability to conduct himself appropriately.
>
> Again, I say that you cannot — you cannot look at this case without looking at the culture of drugs and the horror that takes place when one lives in and is part of this incredibly unhealthy and dysfunctional world. . .

(Id. at 129-30).

- 23 -

The judge then indicated that Petitioner had received a substantial sentencing benefit from the reduction of his first-degree murder charge down to manslaughter (Id. at 131). Finally, he set forth the aggravating and mitigating circumstances he had found:

> Certainly, a substantial aggravating factor that I find — I have considered the aggravating factors and the circumstances and I find that the emotional and financial harm — and, of course, emotional harm is beyond belief — that was caused to the victim's family I find as a substantial aggravating factor. And this was not disputed by anyone. Both the state and the defense agree that this is a proper aggravating factor. Their son will not come back.

> I find as a second aggravating factor, again, it's a substantial aggravating factor, that although I believe Mr. DeBerry does — Mr. DeBerry, you do have some real regret in regards to your family and in regard to — even in regard to the Latterys. The statements of the witnesses, also evidence that was presented, and even your own statement demonstrates to me that still a large — a piece of you now still says and has always said that it was justified and that you had — that he was — he was after you and you shot. And the lack of remorse, if you will, I think is an appropriate factor. You cannot — in order for you to responsibly begin — not begin, but complete and really be rehabilitated, you must acknowledge your real responsibility in this and full responsibility and acknowledgment in this. And I find even after your statement that, although, there — certainly you feel profoundly sad for your family and others, that your self-absorption is such that you see yourself as a victim of this in some ways and that you are not. So I find that as an aggravating factor.

> I find as another aggravating factor the methamphetamine use. I can't ignore the fact that this was the culture of drugs and that your involvement in it aggravated and horrified this nightmare to where it is. I cannot ignore the horrific aspects of this.

> I find as mitigating factors that, of course — and I do find this as a mitigating factor — that there are no prior convictions, nor any prior arrests. I don't find that as a substantial mitigating factor because it's clear that you were living in a somewhat unlawful situation over the last several years prior to that.

> I find that you also, as a mitigating factor, have a supportive family. Quite supportive family . . . On the other hand, I can't find that as a substantial mitigating factor because you're an adult. You're 27, I believe — 27 years old when this took place. I do believe that you are, as part of that — and because of your supportive family and, as I already indicated, because of the diagnosis I believe you have some real chances of rehabilitation, but that is going to take some long time.

(Id. at 132-34).

- 24 -

After weighing the aggravating and mitigating circumstances, the judge imposed a prison sentence of 16 years. A thorough review of the hearing transcript reveals that the judge did consider pertinent mitigating evidence when determining an appropriate sentence. The sentencing judge acknowledged on the record Petitioner's ADHD and drug use, and what effect, if any, he felt they had on the sentence. In the case of Petitioner's methamphetamine use, the trial judge found it to be an aggravating factor, rather than a mitigating factor. The fact that the mitigation evidence was not found weighty does not mean that the judge failed to consider it.

Therefore, Ground 1(a) is dismissed with prejudice.

## II.     Ground 1(b): Aggravation Based on Lack of Remorse

With regard to Ground 1(b), the magistrate judge recommended that this ground be denied. Although the Arizona Court of Appeal's decision rejecting Petitioner's Fifth Amendment claim was contrary to established Supreme Court precedent (Doc. 62, pp. 23-24), Petitioner failed to establish that his sentence was aggravated based upon his silence (Id. at 25-31). Furthermore, petitioner waived his right to remain silent when he testified regarding his remorse at sentencing (Id. at 31-33).

Petitioner argues that the sentencing court punished him for maintaining he fired his gun in the face of provocation, the basis for his Plea Agreement (Doc. 67, pp. 29-34). According to Petitioner, the sentencing court interpreted these statements as indicating a lack of remorse and aggravated his sentence, in violation of his Fifth Amendment right to remain silent (Id.).

The Court adopts this portion of the magistrate judge's report, and denies Petitioner's claim as to lack of remorse. Neither party disputes that Ground 1(b) was properly exhausted because Petitioner presented his claim to the trial court, Court of Appeals, and Arizona Supreme Court (Exhibit N, PCR Petition at 32-33; Exhibit R, Response at 9-10; Exhibit V,

Petition at 4, 6-8).  As Petitioner's claim was summarily denied by the Arizona Supreme Court, the magistrate judge correctly reviewed the "last reasoned decision," in this case, that of the Arizona Court of Appeals.  <u>Barker</u>, 423 F.3d at 1091 ("Before we can apply AEDPA's standards, we must identify the state court decision that is appropriate for our review.  When more than one state court has adjudicated a claim, we analyze the last reasoned decision.")

To be entitled to relief under AEDPA, Petitioner must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner claims his Fifth Amendment right to remain silent was violated at sentencing when he was penalized for not expressing remorse for Lattery's death.  In rejecting his claim, the Arizona Court of Appeals distinguished pleading defendants and defendants who maintain their innocence at trial (Doc. 57, Traverse, Exhibit K at 15-16).  In <u>State v. Tinajero</u>, the court held that "[w]hen a convicted person maintains his innocence through sentencing, as Tinajero did here, his failure to acknowledge guilt 'is irrelevant to a sentencing determination' and 'offends the Fifth Amendment privilege against self-incrimination.'"  188 Ariz. 350, 357, 935 P.2d 928, 935 (Ct. App. 1997) (quoting <u>State v. Hardwick</u>, 183 Ariz. 649, 656, 905 P.2d 1384, 1391 (Ct. App. 1995)) .  Since Petitioner in the present case had pled guilty to the homicide, the Arizona Court of Appeals distinguished <u>Tinajero</u> and found that Petitioner's guilty plea deprived him of Fifth Amendment protection (Doc. 57, Traverse, Exhibit K at 15-16).  In reaching this conclusion, however, the state court acted "contrary to" the "clearly established Federal law" of the Supreme Court decision, <u>Mitchell v. United States</u>, 526 U.S. 314 (1999).

In <u>Mitchell</u>, the Supreme Court examined  the right to remain silent at sentencing when a guilty plea is entered.  The defendant in <u>Mitchell</u> had plea guilty to drug charges, but later refused to testify at sentencing to rebut evidence of drug quantity offered by the

- 26 -

government. 526 U.S. at 317-19. The trial court ruled that there was no right to remain silent following a guilty plea, and had relied on the defendant's refusal to testify in deciding the sentence. Id. at 319. The Court of Appeals for the Third Circuit affirmed the sentence and held that by pleading guilty, the defendant had waived her Fifth Amendment privilege. Id. at 319-20. However, the Supreme Court found that where a sentence had not yet been imposed, criminal defendants could have a legitimate fear of adverse consequences if they testified at sentencing, and thus, the privilege still applied. Id. at 325-26. The Court stated, "'[a]ny effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.'" Id. at 326 (quoting Estelle v. Smith, 451 U.S. 454, 463 (1981)). Consequently, the Court held that the Fifth Amendment right to remain silent survives a guilty plea and still applies at sentencing. Id. at 317, 327. In the present case, the Arizona Court of Appeals acted contrary to the established law of Mitchell by holding that Petitioner's plea of guilty alleviated any Fifth Amendment concerns. 28 U.S.C. § 2254(d)(1).

As the magistrate judge noted, although a finding that the state court acted "contrary to" established Federal law is necessary to habeas relief, it is not sufficient without a finding that the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As a result, this Court now examines whether Petitioner's Fifth Amendment rights indeed were violated.

Preliminarily, this Court must review Petitioner's claim de novo because the state court never reached the merits of Petitioner's claim. See Barker, 423 F.3d at 1092 ("28 U.S.C. § 2254(d) applies only to those claims that have been adjudicated on the merits. . . The requirement of an adjudication on the merits . . . means that the court must finally resolve the rights of the parties on the substance of the claim."); Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004) ("De novo review, rather than AEDPA's deferential standard, is

applicable to a claim that the state court did not reach on the merits."). The Arizona Court of Appeals never made any explicit findings on whether the trial court had relied upon Petitioner's silence in finding a lack of remorse. The deference normally accorded to the state court under 28 U.S.C. § 2254(d)(1) does not apply.

Petitioner challenges the trial court's reliance on his silence, and in particular, his failure to express remorse for the victim Lattery's death. During sentencing, the trial judge's finding of a lack of remorse was grounded in evidence other than Petitioner's silence, as evidenced by the following transcript excerpt.

> I find as a second aggravating factor, again, it's a substantial aggravating factor, that although I believe that Mr. DeBerry does - - Mr. DeBerry, you do have some real regret in regards to your family and in regard to - - even in regard to the Latterys. *The statements of the witnesses, also evidence that was presented, and even your own statement demonstrates to me that still a large - - - a piece of you now still says and has always said that it was justified* and that you had - - that he was - - he was after you and you shot. And the lack of remorse, if you will, I think is an appropriate factor. You cannot - - in order for you to responsibly begin - - not begin, but complete and really be rehabilitated, you must acknowledge your real responsibility in this and full responsibility and acknowledgment in this. And I find even after your statements that, although, there - - - certainly you feel profoundly sad for your family and others, that your self-absorption is such that you see yourself as a victim of this in some ways and that you are not. So I find that as an aggravating factor.

(Exhibit M, R.T. 6/15/00 at 132-33 (emphasis added).) This passage indicates that the trial judge based his aggravated sentence in part on a finding that Petitioner failed to "acknowledge [his] real responsibility," and instead had "justified" his actions (Id.). Petitioner argues that such comments are a condemnation of the fact that Petitioner did not admit that he was not provoked. Petitioner contends that the trial judge penalized him for failing to admit uncharged conduct, and thus, violated his right to remain silent.

However, a review of the transcript of the sentencing proceeding clearly reveals that the trial judge was not looking for Petitioner to admit that he was not provoked sufficiently to reduce his intentional homicide to manslaughter. Indeed, the trial judge repeatedly

- 28 -

commented that he was satisfied that the crime had been established to be a provoked manslaughter.

> But this case is a case of manslaughter. And that is defined and defined clearly in the heat of passion; and that is, that the person commits manslaughter by committing second degree murder upon sudden quarrel or heat of passion resulting from adequate provocation by the victim. And adequate provocation is defined as conduct or circumstances sufficient to deprive a reasonable person of self-control.
>
> I reiterate that that is what the case is because that is what the plea was to and that is what the factual basis that was presented for this plea was and that is what we have. And in this plea - - and there is a substantial factual basis for that, as was put on the record by both counsel - - or by both sides and by both counsel representing the state and the defendant at the prior hearing. What might have been from - - is simply what might have been, but there was clearly, no matter how constricted the facts, the state and the defense placed a substantial factual basis showing that there was - - that this was a manslaughter case.

(Exhibit M, R.T. 6/15/00 at 124-25.)   The trial court merely wanted Petitioner to acknowledge that his conduct, although sufficiently provoked, was wrongful because a human life had been taken.  While Petitioner expressed remorse for the sorrow and loss caused to the Lattery family as well as to his own family, Petitioner failed to express any regret for killing Lattery (Id. at 121-22).  Although Petitioner argued that no remorse was possible "because he was adequately provoked by the victim," such provocation does not mean that Petitioner's conduct was justified (Doc. 57, Traverse at 23.)

The Court finds, as did the magistrate judge, that Petitioner's silence at sentencing was not relied upon to enhance Petitioner's sentence.  The trial judge merely examined the evidence to determine whether Petitioner took any responsibility for his conduct, and thus, whether he was remorseful for the homicide.

Even if the trial judge had relied upon Petitioner's silence to ascertain his lack of remorse, Petitioner waived his right to remain silent by speaking about his remorse at the sentencing.  "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when

questioned about the details." <u>Mitchell</u>, 526 U.S. at 321.  In responding to the prosecutor's comments at the sentencing, Petitioner addressed the topic of his remorse.

> I still have a lot of conflict and a lot of confusion when it comes to my feelings on what took place with myself and Lamont and how remorseful I really am about his death.  He caused me not just a few days or a few letters that you've seen of hardship, but years of continual letters.  And we've gone into this, too, and it sounds like a broken record and running over the same thing so I'm not going to go in that direction either.

(Exhibit M, R.T. 6/15/00 at 122.)  By voluntarily testifying about his remorse, Petitioner waived his right to later assert a violation of his Fifth Amendment right to remain silent.

Accordingly, Ground 1(b) is without merit and will be denied.

## III.  Ground 1(c): Aggravation Based on Drugs

In his Report and Recommendation, the magistrate judge recommended that Ground 1(c) be dismissed with prejudice for reasons identical to those articulated for Ground 1(a). By failing to present his due process claim to the Arizona Court of Appeals, Petitioner did not exhaust his state remedies and procedurally defaulted on his claim (Doc. 62, pp. 33-34).

Petitioner argues that he fully exhausted this claim by presenting it in his post-conviction relief petition (Doc. 67, p.34).  After prevailing on this claim in the trial court, Petitioner claims he was not required to exhaust in either in the Court of Appeals or the Arizona Supreme Court (<u>Id.</u>).  Additionally, the sentencing court violated Petitioner's liberty interest without due process of law by considering his drug use as an aggravating factor (<u>Id.</u> at 35-37).  According to Petitioner, Arizona law requires that any evidence showing that defendant's ability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was impaired at the time of the crime should be considered mitigating (<u>Id.</u> at 35).  Instead, the trial court judge incorrectly viewed Petitioner's drug use as an aggravating factor (<u>Id.</u> at 35-36).

## A.    Exhaustion of State Court Remedies

### 1.    Post-Conviction Review Court

In his Petition for Post-Conviction Relief, Petitioner argued that his rights under the Fifth, Sixth, and Fourteenth Amendments were violated when the sentencing court found two aggravating factors that are not recognized under the state or federal constitutions (Exhibit N, PCR Petition at 2). Petitioner later identified those aggravating factors as lack of remorse (PCR Petition at 32-33) and his drug use (PCR Petition at 34-37). Although Petitioner cited the Fifth Amendment and applied Supreme Court precedent to support his argument that the trial court's finding of lack of remorse violated his privilege against self-incrimination (PCR Petition at 32-33), Petitioner presented no similar argument to support his claim that the trial court violated the Fifth, Sixth, and Fourteenth Amendments by finding that his drug use constituted an aggravating factor. Beyond a solitary citation to the three constitutional amendments, Petitioner did not present any further federal law-based argument on the aggravation claim as it related to his drug use. Petitioner merely cited to state law that he argued required drug use to be considered a mitigating, rather than an aggravating factor (PCR Petition at 35). Therefore, Ground 1(c) was not properly exhausted.

## B.    Procedural Default

As with Ground 1(a) above, Petitioner's Ground 1(c) is now procedurally defaulted. The Court finds that Petitioner failed to present this claim to the post-conviction review court, but that a return to state court would be futile. The Arizona Rules of Criminal Procedure preclude relief "based upon any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3). Moreover, the time for Petitioner to file a direct appeal has elapsed. See Ariz. R. Crim. P. 31.3 (time for filing a direct appeal expires twenty days after entry of judgment and sentence). Similarly, Petitioner cannot file a successive post-conviction relief petition because the filing deadline has passed and the exceptions outlined in Arizona Rule of Criminal Procedure

32.1(d) through (h) are inapplicable. <u>See</u> Ariz. Crim. P. 32.4 (deadline for filing petitions for post-conviction relief); Ariz. R. Crim. P. 32.1(d)-(h). Furthermore, Petitioner offers no showing of cause and prejudice or actual innocence to excuse the procedural default.

Finally, to the extent that Petitioner contends that the state courts failed to follow Arizona law by characterizing his methamphetamine use as an aggravating factor, the claim is a state law claim not cognizable on habeas review. "It is not the province of a federal habeas court to re-examine state court determinations of state law questions." <u>Estelle</u>, 502 U.S. at 67-68. Whether a particular circumstance is mitigating or aggravating does not give rise to a federal claim in a non-death penalty case. <u>See</u> <u>LaFleur</u>, 971 F.2d at 211 (recognizing that there is no constitutionally mandated individualized sentencing doctrine outside the capital context).

Accordingly, Ground 1(c) must be dismissed with prejudice.

## IV.    Ground 2: Breach of Plea Agreement

As to Ground 2, the magistrate judge recommended that the Court grant relief. Petitioner fully exhausted his Ground 2 claim by presenting it to the trial court as well as to the Arizona Court of Appeals (Doc. 62, pp. 35-38). Presentation to the Arizona Supreme Court was not required (<u>Id.</u>) However, the magistrate judge determined that the appeals court misconstrued Petitioner's claim as asserting an agreement on the degree of provocation, as opposed to an agreement on the existence of provocation (<u>Id.</u> at 39-49). Consequently, despite having implicitly found an agreement on the existence of provocation, the state court failed to consider the clear and convincing evidence of the prosecution's breach of that agreement, resulting in a rejection of Petitioner's claim based on an unreasonable determination of the facts (<u>Id.</u> at 49-59).[9]

---

[9]As to the proper remedy for the breach, the magistrate judge recommended that Petitioner be released unless within thirty days of this Court's judgment the State of

This Court respectfully disagrees with the magistrate judge as to the merits of Ground 2. Although the Court agrees that Petitioner was not required to present his claim to the Arizona Supreme Court for purposes of exhaustion, it finds that the prosecutor did not breach the plea agreement, and thus, no re-sentencing is required.

## A.    Exhaustion of Remedies

Petitioner's presentation of his claims to the Arizona Court of Appeals was sufficient to exhaust his state remedies. In O'Sullivan v. Boerckel, the U.S. Supreme Court recognized that only "available" remedies must be exhausted and advised habeas courts not to ignore state rules or law that make certain procedures "unavailable." 526 U.S. 838, 847 (1999). Arizona is one such state where review by the Arizona Supreme Court is not "available." In State v. Sandon, the Arizona Supreme Court noted that, absent cases where the death sentence or life imprisonment is imposed, there was no right to appeal to the Arizona Supreme Court. Sandon, 161 Ariz. 157, 158, 777 P.2d 220, 221 (1989) (en banc) (citing A.R.S. § 12-120.21(A)(1)). Thus, the Arizona Supreme Court held that a petition for review to the Arizona Supreme Court was not required to exhaust state remedies for federal habeas purposes. Later, in Swoopes v. Sublett, the Ninth Circuit relied on O'Sullivan and Sandon to conclude that Arizona state prisoners have exhausted claims presented in habeas petitions if they have been ruled upon by the Arizona Court of Appeals, except in cases where a life sentence or the death penalty is imposed. 196 F.3d 1008, 1009-10 (9th Cir. 1999).

In his Cross-Petition to the Arizona Court of Appeals, Petitioner clearly presented his due process claim regarding breach of the plea agreement:

> Respondent [Deberry] hereby seeks review of the following issue presented to the Superior Court in his PCR: Is Respondent entitled to either withdraw his guilty plea to manslaughter or be resentenced, since at sentencing the State

Arizona either: (1) grants Petitioner a re-sentencing before a new judge, with appropriate restrictions on the prosecution's ability to challenge the existence of legal provocation; or (2) permits Petitioner to withdraw his plea of guilty (Doc. 62, pp. 60-61).

breached the plea agreement and its other promises and representations made through counsel during pre-plea negotiations and during the change of plea proceeding, which induced Respondent to plead guilty, in violation of his right to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution?

(Exhibit S, Cross-Petition at 2). As Petitioner was not required to present his claim to the Arizona Supreme Court, the Court finds that Petitioner fully exhausted this claim.

### B.    Merits of Claim

#### 1.    Standard of Review

Finding proper exhaustion, the Court will now consider the magistrate judge's finding that the state breached the plea agreement, along with Respondents' objections. As the Arizona Court of Appeals addressed the merits of Petitioner's claim, this Court must address the claim using the deferential standard found in 28 U.S.C. § 2254(d) and apply the presumptions of correctness to the state court's factual findings provided in 28 U.S.C. § 2254(e)(1).

#### 2.    Arizona Court of Appeals Decision

In its memorandum decision, the Arizona Court of Appeals noted that Arizona courts follow federal law, including Santobello, on breaches of plea agreements. See Santobello v. New York, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). The Arizona Court of Appeals also stated that Arizona cases applying federal law have held "that a breach of a plea agreement occurs not only when the State directly breaks its promise, but also when the spirit of the inducement, reasonably inferred from the written agreement, is breached." (Doc. 57, Traverse, Exhibit K, Mem. Dec. at 10). The court then made a series of factual findings in deciding that the state had not breached the plea agreement: 1) "The plea agreement does not contain a stipulation as to sentencing, but specifically states that the 'sentence [is] left to the

discretion of the court.'" (<u>Id.</u> at 11); 2) At the aggravation/mitigation hearing, the state "presented evidence to demonstrate its position 'that there [was] really barely a statutory minimum of issues of provocation'" (<u>Id.</u>); 3) "[T]he defendant presented substantial evidence to counter this position and show that the provocation was great." (<u>Id.</u> at 11-12); 4) "In this case, the evidence concerning the degree of provocation involved was part of the evidence of the circumstances surrounding the commission of the offense. This evidence was relevant to the issues of aggravation and mitigation, and Judge Van Wych properly considered it in sentencing." (<u>Id.</u> at 13).

### 3. Nature of the Agreement

The magistrate judge engaged in a thorough analysis of the nature of the agreement, if any, between the state and Petitioner. The magistrate judge concluded as follows: 1) the state's implicit agreement was limited to conceding that legally adequate provocation existed, and 2) the prosecution did <u>not</u> promise that it would not contest Petitioner's evidence and arguments that Lattery's conduct constituted "extreme" or "unprecedented" provocation (the degree of provocation) (Doc. 62, pp.48-49). Preliminarily, it is important to note that Respondents do not challenge these findings, and instead focus their objections on the findings regarding the state's alleged breach of the agreement that adequate provocation existed (Doc. 66, p.4).

### 4. Breach of the Agreement

### a. Legal Standard

A plea agreement is a contract; as such, the government is held to the literal terms of the plea agreement. <u>United States v. Mondragon</u>, 228 F.3d 978, 980 (9th Cir. 2000). The federal Constitution's due process clause confers on a defendant the right to enforce the terms of a plea agreement. <u>Brown v. Poole</u>, 337 F.3d 1155, 1159 (9th Cir. 2003). "Because

the defendant in a plea agreement relinquishes his constitutional right to a trial, . . . 'the integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement.'" United States v. Allen, 434 F.3d 1166, 1174 (9th Cir. 2006) (quoting Mondragon, 228 F.3d at 981). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262.

In determining whether a plea agreement has been breached, courts consider what was "'reasonably understood by (defendant) when he entered his plea of guilty.'" Gunn v. Ignacio, 263 F.3d 965, 970 (9th Cir. 2001) (quoting United States v. Arnett, 628 F.2d 1162, 1164 (9th Cir. 1979)); Brown, 337 F.3d at 1159-60 ("'Focusing on the *defendant's* reasonable understanding also reflects the proper constitutional focus on what induced the *defendant* to plead guilty.'") (emphasis in original)(quoting United States v. De la Fuente, 8 F.3d 1333, 1337 n.7 (9th Cir. 1993)))). It does not matter whether a prosecutor's statements may not have influenced the ultimate sentence imposed. "The harmless error rule does not apply when the government breaches a plea agreement." Mondragon, 228 F.3d at 981.

The magistrate judge's conclusion that the plea agreement was breached rested on the following evidence: (1) three different lines of questioning during Sergeant Treadway's testimony on the first day of the aggravation/mitigation hearing; (2) a passage from the state's pre-sentencing memorandum regarding the effect of Lattery's answering machine message; and (3) two arguments made by the Deputy County Attorney prior to Petitioner's sentence being imposed regarding the answering machine message and Petitioner's motive for the killing.

b.     Sergeant Treadway's Testimony

At the sentencing hearing, the prosecution obtained the following testimony from Sergeant Treadway:

Q. [Prosecutor] Now during [the time when you were arranging a formal interview with the defendant] did [his father] Danny DeBerry offer any information that he had about Lamont Lattery except that he knew him and he had talked to him a month before and he had heard two messages on the machine?

A. [Sergeant Treadway] No. That's all he offered.

Q. And did [his mother] offer anything?

A. No, sir.

Q. Specifically, did they report to you that Mr. Lattery had been a pest or had been stalking [Petitioner] or anything like that?

A. No. Nothing like that was said.

(Exhibit K, R.T. 6/13/00, at 93-94.)

Q. [Prosecutor] And. . . are there any mentions in [DeBerry's journal] of . . . Lamont Lattery stalking Mr. DeBerry?

A. [Sergeant Treadway] No, sir, there's not.

Q. Or threatening him?

A. No.

Q. Or concerns about guns that he might have?

A. No.

(Id. at 121)

Q. BY MR. HORLINGS [Prosecutor]: Now, in the DeBerry journal is there any indication that Mr. DeBerry feels harassed by Lamont Lattery?

A. [Sergeant Treadway] No.

Q. Or that he's coming to his house?

A. No.

Q. Or making unwanted phone calls?

A. No, sir.

(Id. at 129.)

In his Report and Recommendation, the magistrate judge concedes that the questioning of Sergeant Treadway was insufficient by itself to demonstrate breach of the plea agreement by the state (Doc. 62, p.52). As the magistrate judge stated, "Standing alone, that line of questioning could be understood as simply plumbing the degree of the provocation."

- 37 -

(Id.)  However, Respondents argue that the record shows that the prosecution had a motive besides "plumbing the degree of the provocation." (Doc. 66, p.6)  In anticipation of Petitioner's parents testifying as mitigation witnesses, the state sought to show that they were less than forthcoming with Sergeant Treadway regarding what they knew about Lattery (Id. at 6-7).  When Petitioner's parents were questioned on October 6, 1999, the day following Lattery's murder, Petitioner's father, Danny DeBerry, told Sergeant Treadway merely that "he knew him and he had talked to him a month before and he had heard two messages on the machine." (Id. at 8)  Later, at the mitigation phase of the sentencing, however, Petitioner's parents related in great detail the number of times they saw Lattery loitering outside their home awaiting Petitioner, the substance of Lattery's answering machine messages, and the extent to which Lattery expressed sexual interest in Petitioner(Id.; Exhibit M, R.T. 6/15/00, at 14-24, 43-44, 48-50, 56-57.)

Respondents' argument about their motive for offering the above testimony is unavailing.  If the government engages in conduct that breaches a plea agreement, the motive for doing so is irrelevant to the issue of whether a breach occurred.  In Santobello, where the breach resulted from the innocent mistake of a prosecutor who had entered the case following the execution of the plea agreement, the Supreme Court stated that the fact "[t]hat the breach of agreement was inadvertent does not lessen its impact." Santobello, 404 U.S. at 262.

Nevertheless, in examining Sergeant Treadway's testimony, the Court finds that the testimony elicited was aimed at showing that the provocation was minimal rather than unprecedented as Petitioner claimed.  As such, the testimony went to the degree of the provocation, rather than whether provocation existed, which was the subject of the plea agreement.

c.    Sentencing Memorandum

In its sentencing memorandum, the prosecution argued that the provoking event was the phone message left by Lattery on Petitioner's answering machine.  The message accused

Petitioner of "using drugs and being gay." (Exhibit I, State's Aggravating Hearing Memo at 13). However, the magistrate judge found that the sentencing memorandum later attacked the factual foundation and legal sufficiency of that provocation. In so finding, the magistrate judge relied on the following passage from the state's sentencing memorandum:

> Defendant has repeatedly claimed he shot [Lattery] because [Lattery] left an offensive message on his answering machine. Only the defendant ever heard that message, of course, although the police attempted to find it. According to the defendant, the message accuse him of using drugs and being gay. Defendant claimed to [the polygrapher] that he was afraid his parents would hear it and killed Lattery to prevent that. However defendant's mother testified that she and defendant's father were already aware of defendant's drug problem and were also aware that Mr. Lattery was telling people defendant was gay. Even if a call left on a message machine revealed secrets, it could not justify shooting the caller. This message, even on defendant's theory, did not reveal secrets.

(Id. at 13-14).

In relying upon this portion of the sentencing memorandum, as well as the prosecutor's arguments at sentencing (discussed below), the magistrate judge focuses upon Lattery's answering machine message as if it were the sole evidence of provocation that supported the manslaughter charge. The record does not support this conclusion. First, Arizona's manslaughter jurisprudence states that words alone are insufficient provocation to justify reducing a homicide from first-degree premeditated murder to manslaughter. See State v. Doss, 116 Ariz. 156, 162, 568 P.2d 1054, 1060 (1977) (en banc) ("The provocation which the defendant sets up consisted of words. We agree with the great weight of authority that words alone are not adequate provocation to justify reducing an intentional killing to manslaughter.") (quoting 40 AM.JUR.2D HOMOCIDE § 64).

Second, Petitioner's arguments that the provocation was "extreme" and "unprecedented" as to justify a mitigated sentence were not limited to the phone message,

but included numerous other examples of provoking conduct by Lattery.[10]  During the

change-of-plea hearing, both parties provided a factual basis for the manslaughter guilty plea

that included provocation not limited merely to Lattery's telephone call.  The prosecutor

offered the following factual basis:

> A Flagstaff Police Department investigation revealed that Kyle DeBerry killed Lamont Lattery on October 5th of 1999.  The body was found at the same location where the shooting was done.  DeBerry admitted to Ron Schmeck, an independent polygrapher for the Flagstaff Police Department, that *he had shot Lattery because Lattery had apparently been following DeBerry around and apparently had parked near DeBerry's parents' house and watched the house a few days before the shooting.*  DeBerry had apparently also received a phone call message from the victim on the same day of the shooting which apparently used profanity and demeaning language towards DeBerry, and that apparently provoked DeBerry and led him to load his .45 caliber black powder pistol gun and request a meeting with Lamont Lattery.
>
> DeBerry called Lattery back and arranged to meet near the Little America Hotel in east Flagstaff.  DeBerry and Lattery encountered each other in the wooded area near the hotel and apparently had some conversation about the phone message that was left at the DeBerry house.  *DeBerry was apparently unsettled that Lattery was possibly spreading false rumors about him and following him around.*
>
> After some further short remarks DeBerry raised his preloaded gun and shot Lattery in the upper chest area. Lattery died shortly thereafter.

(Exhibit H, R.T. 5/12/00, at 10-11) (emphasis added).  The state's factual basis did not rely

merely on the phone message from Lattery, but also indicated that Lattery had been

following Petitioner, parking near his parent's house, and stalking Petitioner.  Additionally,

Lattery allegedly had been spreading rumors regarding Petitioner's homosexuality and drug

use.  In its sentencing memorandum, the state argued that the phone message was not the

only provocation resulting in Lattery's death.  The magistrate judge focused only on the

---

[10] There was sufficient evidence in the record of provocation such that the prosecution's arguments could not eviscerate the existence of provocation. This evidence included, for example, Lattery's journal entries expressing sexual desire for Petitioner; testimony by Petitioner's girlfriend regarding Lattery's constant paging, telephone calls, and loitering outside her residence; and testimony by the girlfriend's daughter that Lattery tried to run her and Petitioner off the road.

phone message portion of the factual basis and did not consider the other provoking conduct suggested by the state.

Indeed, defense counsel also recognized that the phone call was insufficient provocation for a manslaughter conviction. After being asked by the court whether he agreed with the state's factual basis, defense counsel expanded on the conduct he believed provoked Lattery's killing.

> Judge, we do. Just to further perhaps comment, we agree that the shooting took place as a result of an ongoing problem that developed by Mr. Lattery stalking and continuing to sexually pursue Mr. DeBerry; that Mr. DeBerry had made clear that he wanted no part of that but, nonetheless, that continued, it continued to escalate; Mr. Lattery was unceasing in his pursuits of Mr. DeBerry, threatening both sexually and physically to Mr. DeBerry. Lesser forms of trying to get Mr. Lattery to cease his behavior were not successful.
>
> There is a lot of evidence that demonstrates that Mr. Lattery had threatened to break every bone in Mr. DeBerry's body, had threatened him sexually repetitively, both over the phone, in person, and by written letter, which we will produce at the appropriate hearing; that many third parties heard the threats or are aware of the danger that was posed by Mr. Lattery to Mr. DeBerry; that Mr. DeBerry believed Mr. Lattery because of his personal observations was armed with a weapon; that in the past Mr. Lattery had tried to injure Mr. DeBerry physically; that Mr. Lattery had a reputation for being willing to resort to physical violence. For all those reasons and for the other reasons identified by the state with the immediate phone call preceding this situation which threatened Mr. DeBerry with sexual injury and other problems the confrontation occurred. Mr. DeBerry, in essence, became overwhelmed with the provocation that had escalated and lost control and did commit the shooting. More evidence on that will be presented at a mitigation hearing.

(Exhibit H, R.T. 5/12/00, at 12-13)

Moreover, prior the sentence being imposed, the prosecution acknowledged that Lattery's conduct provoked Petitioner, albeit far from the "unprecedented" level of provocation that defense counsel claimed to have existed:

> And I want to compare, because both sides, of course, from the October 5th interview and also from the defense presentation, have talked about threats. There were threats made by both sides. They're offered as a form of provocation by the defense. But the statements of Lamont Lattery are in the order of "I'll kick your ass," and a letter unsent to a third person [Sharon] that says, "I'll break every F'ing bone in his body."

. . .

> And I want to talk a bit about the sexual relationship. On page six of the interview Kyle [Petitioner] makes it clear that it's he, not Lamont, who first raised the issue of Lamont's sexual orientation. We know that that Lamont has not been making unwanted advances prior to that time. [Petitioner] wants to know. [Petitioner] asks. Lamont says, "Yes, I'm gay." *And we know that by the end of the relationship, Lamont is infatuated with [Petitioner]. He's very desirous of a sexual relationship with [Petitioner]. He says that to [Petitioner], that he loves him. Mrs. DeBerry acknowledged this morning that she understood that Lamont loved her son. . . . And, of course, throughout this, [Petitioner] has insisted that he didn't want a sexual relationship and he's insisted there never was a sexual relationship. I think it's clear by the end of this he didn't want a sexual relationship.* I think it's very clear from many things that the defense has actually tried to push forward to your attention that at some time there was some kind of sexual relationship between these young men.

(Id. at 85-86, 93-94; emphasis added.) By focusing solely on the passages discussing the phone message left by Lattery prior to his death, the magistrate judge failed to consider the other substantial evidence of provocation offered by both sides and submitted to the judge at the change-of-plea hearing as well as the aggravation/mitigation hearing. After examining the record, this Court finds that the state's intent was not to eviscerate the existence of adequate provocation sufficient for a manslaughter charge, and no violation of the plea agreement occurred.

### d. State's Argument at Sentencing

The magistrate judge found that the prosecutor also sought to eviscerate the agreed upon provocation at the aggravation/mitigation hearing when he argued that the phone message was inadequate provocation, and that Petitioner's time for reflection eliminated any provocation that existed.

> And I hope the Court will focus also, in considering second degree murder, loss of control on sudden quarrel or impulse.[11] And the unusual fact

---

[11]While Petitioner argues that the plea agreement was further breached by this reference to second-degree murder, this was simply a recitation of the applicable law by the prosecutor. A "person commits manslaughter by committing second degree murder

here that what's being bootstrapped into a justification is a - - not a conversation face to face, it's not a conversation over the phone, it's a message left on an answering machine. And so the question is, how long did Mr. DeBerry have to regain control?

* * *

...the point is, he had more than three hours to cool off and to relax from whatever provocation was on that message.

(Exhibit M, R.T. 6/15/00 at 82-83.)  In looking at this passage, the Court finds that the prosecutor never argued that Petitioner's heat of passion had completely dissipated by the time he shot Lattery.  Rather, the prosecutor sought to argue that the degree of provocation leading to Lattery's killing was not unprecedented, as claimed by Petitioner, but merely enough to satisfy the minimum statutory requirements for a manslaughter charge.  Since Petitioner had time for his passions to cool, the provocation was not as great as Petitioner claimed.

Moreover, the state's factual basis at the change-of-plea hearing shows that the evidence of adequate provocation included a final verbal exchange between Petitioner and Lattery prior to the shooting:

> Lattery encountered each other in the wooded area near the hotel and apparently had some conversation about the phone message that was left at the DeBerry house. DeBerry was apparently unsettled that Lattery was possibly spreading false rumors about him and following him around.
> After some further short remarks, DeBerry raised his preloaded gun and shot Lattery in the upper chest area. Lattery died shortly thereafter.

(Exhibit H, R.T. 5/12/00, at 11).  This final discussion between Petitioner and Lattery in the woods of Flagstaff is significant because it prolonged whatever heat of passion Petitioner was experiencing as the result of Lattery's phone calls and stalking conduct during the prior months.

---

. . . upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim."  A.R.S. § 13-1103(A)(2).

The magistrate judge found the prosecutor again attacked the provocation from the phone message later in the aggravating/mitigation hearing. In order to understand the passage quoted by the magistrate judge, it must be put into context.

> And I want to talk a bit about the sexual relationship. On page six of the interview [Petitioner] makes it clear that it's he, not Lamont, who first raised the issue of Lamont's sexual orientation. We know from that that Lamont has not been making unwanted advances prior to that time. [Petitioner] wants to know. [Petioner] asks. Lamont says, "Yes, I'm gay." And we know that by the end of the relationship Lamont is infatuated with [Petitioner]. He's very desirous of a sexual relationship with [Petitioner]. He says that to [Petitioner], that he loves him. Mrs. DeBerry acknowledged this morning that she understood that Lamont loved her son. And as Jim Lattery says, his son, Lamont, was killed by someone he loved, and he was killed for the crime of loving him. And, of course, throughout this [Petitioner] has insisted that he didn't want a sexual relationship and he's insisted there never was a sexual relationship. I think it's clear by the end of this he didn't want a sexual relationship. I think it's very clear from many things that the defense actually has tried to push forward to your attention that at some time there was some kind of sexual relationship between these young men.
>
> Here, of course — I know you've already seen this—but [Petitioner] says—and this is October 5th when he's still denying he's the killer—"I mean, we've been using drugs or whatever. [Lamont] was playing with himself or whatever with his clothes on or whatever. And he would just say something, an invitation to sex, and we'd just get naked or something and then I would laugh and do or say, yeah, you know, whatever turns you on."
>
> And, also, I think actually the one to read of these, there are now I guess five unreceived letters from Lamont to either [Petitioner] or Sharon in which there's discussion of this. These letters were never sent. There's absolutely no reason to think that Lamont Lattery thought they would be discovered. And, yet, in them he talks about the fact that at some time these young men had a sexual relationship. And he also, in the most explicit and graphic one, he talks about what the sex problems are, what he wants and what [Petitioner] wants, and he says, "I'll master what you want." So this is not to say that [Petitioner] is gay. This is not to say he wanted a sexual relationship. This is to say that, as Sharon Richardson testified yesterday, one of the letters that she got said, "You and I know the truth." *And then the motive for the killing*
>
> *becomes not a phone call, which, again, you'll remember from the release hearing Mrs. DeBerry testified that they already knew that Lamont was telling people that he and Kyle had a sexual relationship. It's not to preserve them from that which is supposed to be on this tape, on the message machine, because they already knew that. It's to keep Lamont from telling the truth about what was going on when they were hanging out doing drugs and each of them using the other.*[12]

---

[12]The portion italicized was relied upon by the magistrate judge in his Report and Recommendation in finding that the prosecutor intended to eviscerate the existence of

- 44 -

> Lamont Lattery was killed because he was a homosexual, because whatever happened between these two young men made [Petitioner] so upset, so angry, particularly when Lamont appeared to be spreading the word of it, that he killed him. And it certainly answers that he killed him not for spreading rumors and lies, but for telling the truth. That is a statutory aggravating factor. He was killed because of his sexual orientation, and you should find that as a statutory aggravating factor.

(Exhibit M, R.T. 6/15/00 at 93-96). This passage demonstrates that the prosecutor's intention was to secure aggravation of Petitioner's sentence due to the homicide being motivated by Lattery's homosexuality. In its aggravation memorandum, the state had argued an aggravating circumstance grounded in A.R.S. 13-702(C)(15), which applies where there is "[e]vidence that the defendant committed the crime out of malice toward a victim because of the victim's identity in a group listed in [A.R.S. 41-1750(A)(3),] or because of the perception of the victim's identity in a group listed in [that statute]." (Exhibit I, State's Aggravating Hearing Memo at 11). This motive did not serve to negate the existence of Petitioner's heat of passion caused by adequate provocation. It was Lattery's homosexual longings for Petitioner and his incessant stalking in the months before his death that constituted the adequate provocation and led Petitioner to kill Lattery in the heat of passion. Ultimately, however, the sentencing judge did not find Lattery's homosexuality to be an appropriate aggravating factor in this case.

In conclusion, the state and Petitioner's agreement was limited to conceding that legally adequate provocation existed to support a manslaughter plea. The prosecution did not promise that it would not contest Petitioner's evidence and arguments that Lattery's conduct constituted "extreme" or "unprecedented" provocation (the degree of provocation) in requesting a lenient sentence. In accordance with this agreement, the prosecutor did not seek to eviscerate the existence of provocation through his sentencing memorandum, testimony elicited at the aggravation/mitigation hearing, or his final arguments prior to

adequate provocation.

imposition of the sentence. Rather, the prosecutor attempted to refute Petitioner's arguments that the provocation in this case was extreme and unprecedented by showing instead that the provocation barely met the statutory minimum. The plea agreement was clear that sentencing was left to the discretion of the court, and Petitioner was sentenced within the statutory range for manslaughter in Arizona. The state court correctly concluded that the plea agreement was not violated. Accordingly, the state court's resolution of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. <u>Williams</u>, 529 U.S. at 412-13. Petitioner is not entitled to relief on this claim, and therefore, Ground 2 will be denied.

## V.    Ground 3(a): <u>Apprendi/Blakely</u> Claim

The magistrate judge recommended that the Court deny Ground 3(a) on the merits (Doc. 62, p.68). Both sides agree that the claim was properly exhausted. In determining retroactivity, the magistrate judge found that new constitutional rules of criminal procedure are not retroactively applied to cases that have become "final" prior to the announcement of the new rules (<u>Id.</u> at 62). In Arizona, a defendant's conviction only becomes final upon the expiration or exhaustion of the defendant's post-conviction proceeding of right (<u>Id.</u> at 63). For Petitioner, that occurred when the Arizona Supreme Court denied review of his post-conviction review petition on May 30, 2003 (<u>Id.</u>). Since <u>Blakely</u> was decided after this time, it could not be applied retroactively to Petitioner's claims (<u>Id.</u> at 64).

<u>Apprendi</u>, however, could be retroactively applied to Petitioner's claims because it was decided in 2000, prior to the Arizona's Supreme Court's denial of review (<u>Id.</u>). Despite this finding, the magistrate judge reasoned that Petitioner was in fact seeking the benefit of the later <u>Blakely</u> decision, and thus, his claim was meritless (<u>Id.</u> at 65).

Petitioner claims he does not seek application only of the <u>Blakely</u> decision, but also <u>Apprendi</u>, a decision issued before Petitioner's conviction became final (Doc. 67, pp. 37-38). As a result, according to Petitioner, <u>Apprendi</u> can be applied without raising the same

retroactivity issues presented by <u>Blakely</u> (<u>Id.</u> at 38). Petitioner argues that his sentence was incorrectly enhanced beyond the statutory maximum by aggravating factors neither found by a jury nor admitted by him, including inadequate remorse and drug use (<u>Id.</u>). Petitioner claims this was a violation of his Sixth Amendment rights under <u>Apprendi</u> (<u>Id.</u>).

The Court adopts the magistrate judge's finding that Ground 3(a) is without merit and should be denied. "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." <u>Teague v. Lane</u>, 489 U.S. 288, 310 (1989) (plurality). The Ninth Circuit has found that both <u>Apprendi</u> and <u>Blakely</u> may not be applied retroactively because they establish new constitutional rules of criminal procedure that do not fit within any of the exceptions to <u>Teague</u>. <u>See</u> <u>United States v. Sanchez-Cervantes</u>, 282 F.3d 664, 665, 671 (9th Cir. 2002) (<u>Apprendi</u>); and <u>Schardt v. Payne</u>, 414 F.3d 1025, 1027, 1038 (9th Cir.2005) (<u>Blakely</u>).

Here, Petitioner waived his right to a direct appeal by entering a plea agreement. A.R.S. § 13-4033(B) ("In noncapital cases a defendant may not appeal from a judgment or sentence that is entered pursuant to a plea agreement or an admission to a probation violation."); Ariz. R. Crim. P. 17.1(e) ("By pleading guilty . . . in a noncapital case, a defendant waives the right to have the appellate courts review the proceedings by way of direct appeal, and may seek review only by filing a petition for post-conviction relief pursuant to Rule 32.") As a result, the only review available to Petitioner was a post-conviction relief petition under Arizona Rule of Criminal Procedure 32. Ariz. R. Crim. P. 17.1(e). In <u>State v. Ward</u>, however, the court held that since a petitioner's "Rule 32 of-right" proceeding is the "functional equivalent of a direct appeal," <u>Blakely</u> applies to those proceedings that were not yet final when <u>Blakely</u> was announced. 211 Ariz. 158, 161-62, 118 P.3d 1122, 1125-26 (Ct. App. 2005). Thus, in Arizona, a pleading defendant's conviction becomes final only upon the expiration or exhaustion of the defendant's post-

conviction proceeding as of right. Id. Petitioner's conviction became final when the Arizona Supreme Court denied review of his of-right post conviction relief petition on May 30, 2003. As Apprendi was decided in 2000, it could be applied to Petitioner's claims; however, the 2004 Blakely decision could not be retroactively applied to Petitioner's claims because Petitioner's conviction was already final.

While Petitioner maintains that Blakely was simply an application of Apprendi and not a new procedural rule, this argument is misplaced (Doc. 67, pp. 37-38). The Ninth Circuit was presented with a similar argument in Schardt, and rejected it. That court noted that every circuit presented with the question had ruled opposite from Blakely, and thus, "the rule announced in *Blakely* was clearly not apparent to all reasonable jurists, nor was it dictated by precedent." Schardt, 414 F.3d at 1035.

As to Petitioner's claim that Apprendi offers relief, the Court finds that this argument also lacks merit. In rejecting Petitioner's claim, the state trial court[13] failed to consider Petitioner's Apprendi claim, and instead relied upon its finding that Blakely was not retroactively applicable (Supplemental Exhibit 2, M.E. 5/10/05 at 3). Since the trial court did not address Petitioner's Apprendi based arguments, there was no state decision to be granted deference, and the magistrate judge conducted an independent review of the claim. See Himes, 336 F.3d at 853 ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable.")

---

[13]A federal habeas court reviews the "last reasoned decision" issued by a state court. Barker, 423 F.3d at 1091. As both the Arizona Court of Appeals (Supplemental Exhibit 5, 4/27/06 Order) and the Arizona Supreme Court (Supplemental Exhibit 7, 10/12/06 Order) issued summary denials of Petitioner's second post-conviction relief petition, the trial court's decision is the "last reasoned decision" regarding Petitioner's claims under Apprendi and Blakely.

In <u>Apprendi</u>, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Since Petitioner pled guilty to manslaughter, a class 2 felony, the presumptive sentence was 10.5 years, unless an aggravating factor was found. A.R.S. § 13-704(A). Since Petitioner was sentenced to 16 years, above the presumptive sentence, the trial court had to find at least one aggravating factor. <u>See</u> <u>State v. Williams</u>, 131 Ariz. 411, 411, 641 P.2d 899, 899 (Ct. App. 1982) (aggravated sentences "were unlawfully imposed because they are beyond the presumptive terms provided by statute and no aggravating circumstances were found by the trial court.").

Then in <u>Blakely</u>, the Court explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. at 303 (citations omitted) (emphasis in original). Before the <u>Blakely</u> decision was announced, the circuit courts of appeals had uniformly found that it was the absolute statutory maximum, not the presumptive maximum without judge determined aggravators, which was affected by <u>Apprendi</u>. <u>See</u> <u>Schardt</u>, 414 F.3d at 1035. As Petitioner's sentence fell below the statutory maximum of 21 years, the failure to submit the sentencing factors to the jury did not violate <u>Apprendi</u>'s mandate.

Even if <u>Apprendi</u> could apply to Petitioner's claim, the magistrate judge found that the failure to submit a sentencing factor to the jury was harmless because Petitioner admitted one of the aggravating factors (Doc. 62, pp. 66-68). "Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." <u>Washington v. Recuenco</u>, 548 U.S. 212, 222 (2006); <u>see also</u> <u>United States v. Salazar-Lopez</u>, 506 F.3d 748, 752 (9th Cir. 2007) (discussing <u>Recuenco</u> and its holding that the harmless error analysis applies to errors arising under <u>Blakely</u>). In enhancing Petitioner's sentence to 16

years, the trial court relied upon three aggravating factors, including (1) the emotional and financial harm caused to the victim's family, (2) Petitioner's lack of remorse, and (3) Petitioner's use of methamphetamine (Exhibit M, R.T. 6/15/00 at 132-33). In his sentencing memorandum, Petitioner conceded that "[e]motional harm to the Lattery family is certainly an aggravating circumstance." (Exhibit J, Sentencing Mem. at 9). Moreover, the trial court acknowledged that "[b]oth the state and the defense agree that [the emotional harm to the family] is a proper aggravating factor." (Exhibit M, R.T. 6/15/00 at 132).

Petitioner's admission of one of the aggravating factors is binding on Petitioner and allowed the trial court to enhance his sentence beyond the 10.5 year presumptive sentence to the aggravated sentence of 21 years. Under Blakely, "when a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." 542 U.S. at 310 (citing Apprendi, 530 U.S. at 488). Petitioner's admission of the existence of an aggravating factor, namely the emotional harm to the Lattery family, extended his maximum authorized sentence to 21 years. Petitioner is bound by his admission. See United States v. Ferreboeuf, 632 F.2d 832, 836 (9th Cir. 1980) (holding that "when a stipulation to a crucial fact is entered into the record in open court in the presence of the defendant, and is agreed to by defendant's acknowledged counsel, the trial court may reasonably assume that the defendant is aware of the content of the stipulation and agrees to it through his or her attorney"); United States v. Hernandez-Hernandez, 431 F.3d 1212, 1219 (9th Cir. 2005) ("we have repeatedly held that criminal defendants are bound by the admissions of fact made by their counsel in their presence and with their authority."). Consistent with the magistrate judge's recommendation, the Court finds that the maximum authorized sentence, taking into account Petitioner's admission, was the aggravated term of 21 years. Therefore, the 16 year sentence imposed by the trial court was within the maximum, and the judicial factfinding that resulted in this sentence was in line with Apprendi and Blakely.

Accordingly, Ground 3(a) is without merit and will be denied.

**VI.    Ground 3(b): Ineffective Assistance of Counsel Claim**

In his Report and Recommendation, the magistrate judge recommended that Ground 3(b) be denied because counsel could not be ineffective for failing to anticipate the later Blakely ruling (Doc. 62, p.73).  First, the magistrate judge found that the trial court had misconstrued Petitioner's claim as challenging trial counsel's conduct, rather than that of his post-conviction relief counsel (Id. p.68).  Accordingly, there was no state decision on the issue, resulting in the magistrate judge conducting an independent review (Id. at 69).  Next, the magistrate judge found that Petitioner's post-conviction relief proceeding represented his first appeal of right, and thus, Petitioner was entitled to effective assistance of counsel (Id. at 69-72).  Finally, since Blakely announced a new rule in the area of sentencing law, the magistrate judge found that counsel could not be faulted for not predicting Blakely (Id. at 72-73).  In his Objection, Petitioner reasserts the same arguments for this claim as Ground 3(a) above (Doc. 67, p.39).

As a preliminary matter, both sides agree that the claim was properly exhausted, and thus, the Court can consider the merits of the claim.  In so doing, the Court adopts the magistrate judge's finding that this claim should be denied.  As neither side challenges the magistrate judge's conclusion that Petitioner was entitled to effective assistance of counsel (Doc. 67, p.39), the Court will only address whether counsel's performance was deficient for not anticipating the holding of Blakely.

Petitioner must show two things to prevail on an ineffective assistance of counsel claim: (1) deficient performance and (2) prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Petitioner bears the burden of showing first, that "counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 266 U.S. at 688-89).  Petitioner must also show that he suffered prejudice due to his attorney's

ineffective assistance by proving that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 266 U.S. at 694).

The reasonableness of counsel's actions is judged from the perspective of counsel at the time of the alleged error and taking account of all the circumstances. Id. (citing Strickland, 466 U.S. at 689). Since counsel's performance is judged contemporaneously, a federal habeas petitioner cannot make an ineffective assistance of counsel claim based on some later favorable ruling not anticipated by counsel. See Lockhart v. Fretwell, 506 U.S. 364, 371-72 (1993) (noting that the assessment of the reasonableness of counsel's performance is based on the law that existed at the time of counsel's conduct). Likewise, in the present case, Petitioner cannot argue that counsel was deficient for failing to anticipate the later Blakely holding. This is particularly true in light of the fact that Blakely announced a rule previously rejected by multiple courts of appeals. See United States v. Ameline, 400 F.3d 646, 652 (9th Cir. 2005) ("*Blakely* worked 'a sea change in the body of sentencing law.'") (quoting United States v. Ameline, 376 F.3d 967,973 (9th Cir. 2004)).

Accordingly, Ground 3(b) is without merit and will be denied.

**CONCLUSION**

Having reviewed the legal conclusions of the Report and Recommendation of the Magistrate Judge, and the objections having been made by Petitioner and Respondents thereto, the Court makes the following conclusions. As to Grounds 1(a) and 1(c), Petitioner failed to exhaust those claims and has now procedurally defaulted on those claims. This Court and the magistrate judge both reach the same result, but under differing rationale. Both of these claims also fail on the merits because they are state law claims not cognizable on federal habeas review. As to Ground 1(b), the state court's rejection of this claim was contrary to established Supreme Court case law. Despite this error, however, Petitioner

failed to show a violation of his Fifth Amendment right to remain silent, and thus, this claim is properly denied.

Petitioner exhausted his Ground 2 (Breach of Plea Agreement) by presenting it to the Arizona Court of Appeals, however, there was no breach of the plea agreement by the prosecutor. As to Ground 3(a), the state court correctly rejected Petitioner's Blakely argument, but failed to consider his claim in light of Apprendi. However, Petitioner did not show any entitlement to relief under the Supreme Court's earlier Apprendi decision. Ground 3(b) was incorrectly understood by the state court as an attack on trial counsel. Nevertheless, Petitioner failed to show ineffectiveness on the part of his post-conviction relief counsel for failing to anticipate Blakely.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Court adopts in part and rejects in part the Report and Recommendation of the magistrate judge (Doc. 62). The Court adopts Grounds 1(b), 3(a), and 3(b) of the magistrate judge's report. The Court rejects Grounds 1(a), 1(c), and 2 of the magistrate judge's report.

**IT IS FURTHER ORDERED** that Ground 1(a) (Mitigation) and Ground 1(c) (Aggravation) of Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 60) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Ground 1(b) (Silence on Remorse), Ground 3(a) (Apprendi/Blakely), and Ground 3(b) (Ineffectiveness of Counsel) of Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 60) be **DENIED**.

**IT IS FURTHER ORDERED** that Ground 2 (Breach of Plea Agreement) of Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 60) be **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court send copies of this Order to all parties of record in the case as well as to the magistrate judge.

**IT IS FURTHER ORDERED** the Clerk of Court terminate this case.

DATED this 22nd day of October, 2009.

Stephen M. McNamee
United States District Judge